# WHEELING.

### STATE *v.* SCHNELLE.

Submitted January 26, 1884—Decided April 26, 1884.

1. Section 1 of chapter 118 of the Acts of the Legislature of 1882 declaring that "in an indictment for murder it shall not be necessary to set forth the manner in which, or the means by which, the death of the deceased was caused, but it shall be sufficient in every such indictment to charge that the defendant did feloniously, wilfully, maliciously, deliberately and unlawfully slay, kill and murder the deceased," and the form therein prescribed in accordance with the above declaration are constitutional.   (p. 777.)

2. Such an indictment is not in violation of the fourteenth section of the bill of rights, which declares that in trials for crimes and misdemeanors " the accused shall be fully and plainly informed of the *character* and *cause* of the accusation," as such an indictment does *fully* and *plainly* inform the accused of the character and cause of the accusation.   (p. 778.)

3. The *character* and *cause* of the accusation are essentially different from the *mode* by, or *manner* in which the deceased was killed. The Constitution does not require, that the accused shall be informed of the " manner, in which or the means, by which the death of deceased was caused.   (p. 778.)

4. In this State there is no such thing as an indictment for murder in the *first* or *second* degree ; the indictment is for *murder*, and it depends upon the proof, whether it is in the *first* or *second* degree.   (p. 779.)

5 In a criminal case, no matter what the nature of the defence, the counsel for the prisoner is not entitled to open and close the argument to the jury.   (p. 779.)

6. The eleventh point of the syllabus in *Cain's Case*, 20 W. Va. 679, re-affirmed.

7. The second point of the syllabus of *Robinson's Case*, 20 W. Va. 764, re-affirmed.

8. A previously formed and expressed opinion of the guilt or innocence of the accused is not of itself sufficient to disqualify a proposed juror. If such a proposed juror shows to the satisfaction of the court in his examination on his *voir dire*, that notwithstanding a previously formed and expressed opinion of the guilt or innocence of the accused his mind is free from bias and prejudice, and the contrary is not shown, he is a competent juror, and ought not be rejected. (p. 780.)

9. But if a proposed juror on his *voir dire* admits, that he has formed and expressed an opinion as to the guilt or innocence of the accused, and halts and hesitates as to his then condition of mind, and cannot say, that his mind is free from bias and prejudice, and cannot say, that the previously formed opinion will not influence his verdict, he is an incompetent juror and ought to be rejected. (p. 780.)·

JOHNSON, PRESIDENT, furnishes the following statement of the case:

On the 9th day of April, 1883, the defendant was indicted in the circuit court of Ohio county for the murder of Guenther Schuchardt, in these words:
"THE STATE OF WEST VIRGINIA:
         *"First Judicial Circuit, Ohio County, to-wit:*
"In the Circuit Court of said County:
"The grand jurors of the State of West Virginia, in and for the body of the county of Ohio, and now attending the circuit court of the said county, upon their oaths present, that Guenther Schnelle, on the nineteenth day of March, in the year of Our Lord one thousand eight hundred and eighty-three in the said county of Ohio, feloniously, wilfully, maliciously, deliberately, and unlawfully, did slay, kill, and murder one Guenther Schuchardt, against the peace and dignity of the State."

The prisoner demurred to the indictment, and his demurrer was overruled, and he thereupon pleaded not guilty. A jury was duly empanneled and sworn to try the issue, and on the 5th day of October, 1883, rendered a verdict of guilty of murder in the first degree, but added thereto, as by the

statute they lawfully might, "and we further find that the defendant be punished by confinement in the penitentiary." The prisoner moved to set aside the verdict, and for a new trial, also for arrest of judgment, which motions the court overruled and sentenced the prisoner upon the verdict of the jury to imprisonment in the penitentiary for life.

To this judgment the prisoner obtained a writ of error.

*W. W. Arnett* for plaintiff in error.

*Attorney-General Watts* for the State.

JOHNSON, PRESIDENT:

The prisoner took several bills of exceptions, which were duly signed, one to the overruling of the prisoner's challenge to the juror Mitchell, another to the overruling of the prisoner's challenge to the juror Ballard, another to the judgment of the court in overruling prisoner's motion to be permitted to open and conclude the argument, another to the refusal of the court to set aside the verdict of the jury and grant the prisoner a new trial, another to the refusal of the court to arrest the judgment, and another to the giving of instructions to the jury.

It is here earnestly insisted by counsel for prisoner that the indictment under our Bill of Rights is bad; that by it the prisoner was not "fully and plainly informed of the character and cause of the accusation against him," a right which is guaranteed to him by our Constitution, and which the counsel of prisoner insists was violated in his being held to answer the indictment in this case. Chapter 118 of the Acts of the Legislature of 1882, amending chapter 144 of the Code, in its first section, declares: "Murder by poison, lying in wait, imprisonment, starving, or any wilful, deliberate and premeditated killing, or in the commission of, or attempt to commit arson, rape, robbery or burglary, is murder of the first degree. All other murder is murder of the second degree. In an indictment for murder and manslaughter, it shall not be necessary to set forth the manner in which, or the means, by which the death of the deceased was caused, but it shall be sufficient in every such indictment to

charge, that the defendant did feloniously, wilfully, maliciously, deliberately and unlawfully slay, kill and murder the deceased." In the same section are forms of indictment for both murder and manslaughter. The form for an indictment for murder is copied in the indictment here. This modification of our statute was evidently taken from 14 and 15 Vict. ch. 100, sec. 4, (re-enacted in 24 and 25 Vict. ch. 100, sec. 6) which declares, that it is not necessary to set forth the manner, in which, or the means, by which the death of the deceased was caused; but it shall be sufficient in every indictment for murder to charge that the defendant did feloniously, wilfully, and of his malice aforethought kill and murder the deceased; and it shall be sufficient in every indictment for manslaughter to charge "that the defendant did feloniously kill and slay the deceased." (2 Bish. Crim. Pro. sec. 523.) Thus we see that in England where originated the common law form of an indictment for murder, in which there was so much useless verbiage, it has now by act of parliament been stripped of it all. Through a long series of years the courts of England from time to time held certain words and phrases used in the indictment as unnecessary. (Bish. Crim. Pr. sec. 498, *et seq.*) In early times in England it was required in the indictment to state the length and depth of the wound to enable the judges, it was said, to see that it was mortal; but where a limb or the head was cut off or a ball was sent through the entire body this averment became impossible and therefore not essential. Finally in 1815 when numerous bruises and lacerations by kicks and other rough usage were charged without specifications of their several lengths and depths, the judges on examination discovered that the precedents had not been uniform, and the majority held the indictment good. They deemed, that because of precedents against the objection they might consider, whether common sense required a statement of these particulars, and as the statement, if made, need not be proved, they thought it unnecessary. And so the law seems to have been continuously held afterwards in all cases whether of many wounds or one. (Bish. Crim. Pr. sec. 518) and cases cited.

In *Noles* v. *The State*, 24 Ala. 672, the indictment was as

follows, omitting the caption: "The grand jury of said Dallas county charge that on the 14th day of February, 1853, Joseph Noles unlawfully and with malice aforethought killed George T. Sharp by shooting him with a gun, against the peace and dignity of the State of Alabama." Chilton, C. J., said: "It is contended that it is in violation of the tenth and twelfth sections of the bill of rights of this State; the first declaring that 'in all criminal prosecutions the accused has a right to be heard by himself and counsel, to demand the nature and cause of the accusation and have a copy thereof, &c.; and further that in all criminal prosecutions by indictment and information,the accused shall have a speedy public trial by an impartial jury of the county or district, in which the offence shall have been committed,' &c.; and the twelfth section providing that 'no person shall for any indictable offence be proceeded against criminally by information.' * * * With respect to the legislative power of the State we have frequently announced that in reference to all legitimate subject-matter of legislation this power was unlimited, except in so far as it was restrained by Federal or State Constitutions. * * * The twelfth section of the bill of rights evidently inhibits the Legislature from passing any law authorizing a party to be proceeded against criminally by information for an indictable offence; but this in no wise restricts the Legislature from enacting laws defining offences and their punishment, and prescribing forms of indictments suited to them, as well as the mode of trying them. They cannot say a party may be proceeded against for an indictable offence by information—that is, they have no power to say a party can be put upon his trial for an offence which is indictable, unless the accusation brought against him is made upon the oath of a grand jury.

"We readily concede that to give effect to the spirit and meaning of this clause there must in all prosecutions for indictable offences, be such an accusation at the suit of the State, found true by the oaths of a grand jury, as shall furnish to the accused reasonable information of what he is called upon to answer by setting forth the constituent of the offence or crime with which he is attempted to be charged. It would not be competent for the Legislature to make that an

indictment which failed to accuse a party of crime. Regard must be had to the nature of the accusation, as embodying and setting forth with reasonable certainty a charge of the crime for which the prisoner is to be tried. An indictment for larceny could not by legislative enactment, be made an indictment for murder, without violating the true spirit and meaning of this provision in the bill of rights; but if the indictment set forth with reasonable certainty the crime for which the accused is to be tried, as the Legislature may alter the common-law, it may declare the indictment to be good, notwithstanding it may fail to contain many averments required by the common-law to make it valid. There must be an indictment before a party can be put on his trial for an indictable offence. In other words, 'there must be a written accusation of the party at the suit of the State, of a crime, presented upon oath by a jury of twelve or more men, called a grand jury.' 1 Arch. Cr. Pl. 63. * * Now although this indictment would not be good at the common-law, because it is wanting in certain formalities which were required by the rules of that law; yet it is certainly an indictment—that is, it is a 'written accusation of a crime against the prisoner found by a grand jury'—and it is a compliance, in our opinion, with the spirit of our fundamental law."

This decision was followed in *Thompson* v. *The State*, 25 Ala. 41, and *Aiken* v. *State*, 35 Ala. 399.

In *Newcomb* v. *The State*, 37 Miss. 397, the indictment was for murder, and almost in the words of the indictment in *Noles's Case, supra.* It was framed under the provisions of the Code of Mississippi, which declares that "in an indictment for homicide it shall not be necessary to set forth the mannner in which or the means by which the death of the deceased was caused, but that it shall be sufficient to charge in an indictment for murder, that the defendant did feloniously, wilfully and of malice aforethought, kill and murder the deceased." It was insisted that the statute was in violation of the clause in the Constitution, which secures to a party accused of crime the right "to demand the nature and cause of the accusation." Handy, J., speaking for the court said, "is the statute then authorizing this indictment in violation

of the right of the accused to be informed of the nature and cause' of the accusation against him? We think not. He is charged in the indictment with *murder*, wilfully, feloniously and of malice aforethought. This shows the 'nature' of the accusation. The *person* upon whom the act is charged to have been committed is also stated, which shows the 'cause' of the accusation. The means by which the act was committed do not pertain to the 'nature' of the accusation, nor are they properly the 'cause' of the charge. When he is charged with *murdering John Freeze* both the nature and cause of the accusation brought against him, are made known to him sufficiently, to enable him to know the particular offence with which he is charged, and prepare to show his innocence, his excuse or his justification. The offence is particularized, so that if he should be acquitted he will be enabled to plead the acquittal in bar of a subsequent indictment for the same offence, for, from the nature of the charge, the offence could be committed but the once, and if he were once acquitted upon the general charge of murdering John Freeze, upon settled principles, that would be an ample defence to any subsequent charge for the murder of him, however made, or upon whatever evidence it might be attempted to be sustained. We do not think therefore, that the means, mode, or circumstances of the commission of the crime of murder, are necessarily embraced in 'the nature and cause' of the accusation, in the sense of the Constitution, and of which the accused has the right to demand information in the indictment. They are rather matters of evidence to establish the charge. The forms of proceedings in which those particulars were observed, have been established by long usage, but for the most part they are but modes of proceeding, which the Legislature has the undoubted power to change or modify. That power they have thought fit to exercise in the enactment of the statute under consideration, and we are satisfied that it does not infringe any substantial right intended to be secured to the accused by the Constitution."

In *Wolf* v. *The State*, 19 Ohio St. 248, the defendant was indicted for manslaughter. The indictment charged that "Jeremiah C. Wolf on —— at —— one Samuel Lee, then and there being did unlawfully kill and slay." The Code of

Ohio provided, that "in an indictment for manslaughter it shall not be necessary to set forth, the manner in which, or the means by which the death was caused; but it shall be sufficient to charge that the defendant did unlawfully kill and slay the deceased." It was contended that this statute violated the provision of the Constitution, which declared that the accused shall be allowed "to demand the nature and cause of the accusation against him and to have a copy thereof," and also that other clause of the Constitution, which declared, that no person should be held to answer for crimes of this grade, "unless on presentment or indictment of a grand jury." It was insisted that the accusation did not amount to an "indictment," nor did it inform the accused of the "nature and cause of the accusation against him." The court upon the authority of *Louger* v. *State*, 11 Ohio 68, held both points against the prisoner, and Day, J., said: "An indictment within the meaning of the Constitution, is nothing more than what it is defined to be by Blackstone (4 Am. 302), 'A written accusation of one or more persons, of a crime or misdemeanor, preferred to, and presented by, a grand jury upon oath.' A written charge against the accused presented by a grand jury upon oath in the form prescribed by the section of the Code under consideration, would contain an accusation of the crime of manslaughter, and would therefore be an indictment within the meaning of the Constitution. Nor do we think the section is in conflict with the constitutional provision that the accused, 'may demand the nature and cause of the accusation against him;' for an indictment in the form prescribed therein would set out the crime laid to his charge, and thereby exhibit, 'the nature and cause of the accusation against him.' The manner in which the crime was committed is entirely apart from the nature and cause of the accusation. *Cathcart* v. *The Commonwealth*, 37 Penn. St. 108."

In the last named case 37 Penn. St. 108, it was assigned as error "that the indictment is insufficient in law to sustain a conviction of murder in the first degree, in that it fails to meet the constitutional requirement, the nature and cause of the accusation not being fully set forth." The court by Strong, J., said: "The indictment is in strict conformity with

the requirements of section 20 of the act of March 31, 1860, the criminal procedure act.   We do not think that act in conflict with the constitutional provision that in all criminal prosecutions the accused shall have a right to be informed of the 'nature and cause of the accusation against him.'   An indictment must exhibit the 'nature and cause of the accusation,' that is, must set out the crime laid to the charge of the accused; but the mode in which the crime was committed, the instrument with which the murder was effected, whether it was held in the right hand or left, whether the wound was inflicted on the head or the body, are entirely apart from the nature and cause of the accusation."

This decision was followed in *Campbell* v. *Commonwealth*, 84 Penn. St. 187, also in *Goerson* v. *Commonwealth*, 99 Penn. 388.   In this case Mercer, J., for the court said:

"This indictment charges the murder in the language of the act to have been committed feloniously, wilfully and with malice aforethought.   Conceding this to be so, it is contended the act is in conflict with section 9 of the Declaration of Rights, which declares that in all criminal prosecutions, the accused has a right to demand the nature and cause of the accusation against him.   The argument is based on the assumption that 'nature and cause' are equivalent to 'mode or manner.'   They are clearly distinct.   The nature and cause of a criminal prosecution are sufficiently averred by charging the crime alleged to have been committed. This must be done.   The mode or manner refers to the instrument with which it was committed, or the specific agency used to accomplish the result.   It is not necessary to aver either of these in the indictment."   See *United States* v. *Simmons*, 96 U. S. 360.

In *McLaughlin* v. *The State*, 45 Ind. it was held, that an indictment charging the defendant with selling liquor contrary to law must give the name of the person to whom the liquor was sold.   If it were a question of first impression we would so hold, but as we have already decided, the Virginia court by a line of decisions the other way before the separation had bound us under the doctrine of *stare decisis*.

In *Rowan* v. *The State*, 30 Wisc. 129, Cole, J., said: "Section 12 of chapter 137 provides that 'in indictments or

informations for murder or manslaughter, it shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient in any indictment or information for murder, to charge that the accused did wilfully, feloniously and of his malice aforethought kill and murder the deceased; and in any indictment or information for manslaughter, it shall be sufficient to charge that the accused did feloniously kill and slay the deceased.' The information in this case conforms to this provision fully and precisely. It is claimed however by counsel for the plaintiff in error that this section is invalid because by section 7 of the Bill of·Rights the accused is secured the right 'to demand the nature and cause of the accusation against him.' We do not perceive anything in chapter 137 which deprives him of that right. The information, plainly, substantially and formally describes the crime of murder and manslaughter. It does not contain all the verbiage and tautology found in the old forms. Nor do we think this necessary. * * * He is charged with the crime of murder and manslaughter. The particular instrument or means used to produce death are not stated, and the law renders it unnecessary. The means by which a homicide is committed may be material in determining the grade of the crime, but they can hardly be said to constitute an essential part of the 'nature and cause of the accusation.' The killing of a human being with premeditated design to effect the death of the person killed, is *murder*, whether death is produced by poison, stabbing, shooting, or by any other means. And when a person is charged in the manner prescribed in section 12 of chapter 137, with the crime of murder, he is fully informed of the nature and cause of the accusation against him."

The contrary of the doctrine announced in the foregoing cases, has been held in *State* v. *Mott*, 29 Ark. 147 ; *Clary* v. *State*, 33 Ark. 561.

The Arkansas cases combat the position taken in the cases, which we have reviewed, with but little force, referring to but few authorities. The other cases cited by the counsel for the plaintiff in error, to-wit: *Murphy* v. *State*, 24 Miss. 590, *Sane* v. *Sane*, 28 Miss. 637, and *Norris* v. *State*, 33 Miss.

373, I do not think sustain his position. None of them were cases of murder or manslaughter and required only such a description of the crime charged as would enable the accused to defend himself, and are ·in harmony with the ably considered case already cited of *Newcomb* v. *The State*, 37 Miss. 383.

From this review of the authorities, it is clear that the Legislature would have no right under a Constitution like ours to dispense with an indictment for murder; but from these authorities it is equally clear that, the accusation we are considering is an indictment; it was found upon the oaths of a grand jury, and is a written accusation against Guenther Schnelle for murder, and it seems to us equally clear that it "*fully* and *plainly* informs the defendant of the character and cause of the accusation against him" as required by section 14 of our Bill of Rights. When Guenther Schnelle was charged by the grand jury with "feloniously, wilfully, maliciously, deliberately and unlawfully slaying, killing and *murdering*" a fellow being, he was *fully* and *plainly* informed, of the *character* of the accusation against him. He was in plain and unmistakable terms informed that the grand jury of Ohio county had charged him with *murder;* and when by the same grand jury, he was charged in the said written accusation, of "feloniously, wilfully, maliciously, deliberately, and unlawfully slaying, killing and murdering Guenther Schuchardt," he was thereby *fully* and plainly informed, that the killing of the said Schuchardt with such motives was the *cause* of his being accused of *murdering* him. How could he be any more *fully* and *plainly* informed of the character and cause of the accusation against him? Would he have been any better informed thereof, if the indictment had contained all the sickening details of how he had mutilated him, with what instrument, and the length and depth of the wound inflicted, and that Schuchardt languished from the effects thereof, and from said wounds died? What good purpose could have been subserved by setting out all this in the indictment? He certainly could not with all this have been any more *fully* and *plainly* informed· of the "character and cause" of the accusation, than by the indictment, which he was called upon to meet. He knew by this indictment,

that he was charged with the *murder* of Guenther Schuchardt. He knew just as well how to defend himself against that terrible charge from the information in this indictment, as if it had given all the details of the killing. If convicted or acquitted of the charge, he could as well hereafter plead a former conviction or acquittal, as if the indictment had in the fullest manner given all the details of the killing. The *character* and *cause* of the accusation, are entirely distinct from the mode or manner of the killing. While the Constitution declares that he shall be *fully* and *plainly* informed of the character and cause of the accusation, it does not require that he shall be *fully* and *plainly* informed of the mode, or manner by or in which the crime was committed.

The Constitution very wisely protects the accused from being indicted for one crime and on that same indictment being tried for and convicted of another crime. He must in the indictment be *fully* and *plainly* informed of the *precise* crime, for which he is to be tried, so that he may know against what to prepare his defence, and may plead the judgment in bar of another indictment against him for the same offence. This he could not do, unless he was fully and plainly informed of the character of the accusation, because he might be tried for some other crime than the one, for which he was indicted; and if he was not informed, whom he had murdered, or against whom the crime was committed, he would not be informed of the cause of the accusation and would not know how to defend himself, and could not plead the former conviction or acquittal in bar of another prosecution for the same offence.

By this indictment, we think the defendant was fully and plainly informed of the character and cause of the accusation, and that the statute prescribing the said form of indictment is therefore constitutional.

But it is argued by counsel for plaintiff in error that, if the indictment is good, it amounts to nothing more than an indictment for murder in the second degree. This position was taken in *Noles's Case*, 24 Ala., and at page 688 Chilton, C. J., for the court said: "We must need say that the form pursued, being that prescribed by the Code, the objections cannot be valid, if the Legislature had power to enact that

the form should be a good indictment. . * * * The jury are to determine whether the proof makes the offence murder in the first or second degree, as they determined at the common-law whether the offence was murder or manslaughter. As the greater includes the less offence, there is certainly nothing anomalous in finding a prisoner guilty of the less, upon an indictment for the greater." We have under our laws no indictment for murder in the first or second degree, but in our practice the indictment is for *murder*, which fully and plainly informs the accused of what he is to defend himself against; and the jury must determine on the proof, whether it is murder in the first degree, or whether the crime is of a less grade.

The prisoner by his counsel also insists, that he should have been permitted to open and close the argument to the jury, because he relied upon the defence of insanity. The plea was not guilty, and although the burden of proof may shift during the trial of a criminal case, yet the general burden of proving the guilt of the prisoner being on the State, in no case in a criminal trial is the counsel for the defendant entitled to open and conclude the argument to the jury.

The instructions at the instance of the State and objected to by the prisoner are, first, the same as approved by the eleventh point in the syllabus in *Cain's Case*, 20 W. Va. 679; and the second is approved by the second point of the syllabus in *Robinson's Case*, 20 W. Va. 713, and both points are here again affirmed. See also *Jones's Case*, 20 W. Va. 764, and *Greer's Case*, 22 W. Va. 800. The third instruction is: "That every man is presumed to be sane and to possess a sufficient degree of reason to be responsible for crime committed by him, until the contrary is proved to the satisfaction of the jury." This instruction propounds the law correctly, as we have seen from *Robinson's Case, supra.*

J. L. Ballard was sworn on his *voire dire* and in answer to questions said he was not on the grand jury, who found the indictment; that he was not related to the deceased or the defendant; that he had no interest in the case; that he was not sensible of any bias or prejudice for or against the accused, but said he had formed and expressed an opinion as to his innocence or guilt; that said opinion was based upon what .

he had read in the newspapers; that he could be governed solely by the law and the evidence in the case. He was asked, "if you have any opinion, is it of that decided character to influence your verdict in deciding upon the testimony offered?" He answered promptly "No, sir."

Question—"Did you read the evidence?" Answer—"I couldn't say, I read nearly everything that pertained to the case at that time."

Question—"And you formed an opinion then?" Answer —"I did, yes, sir."

Question—"You formed an opinion from the evidence?" Answer—"Yes, sir, I think I read the evidence. I read nearly everything."

Question—"And you would go into this trial with that opinion previously formed?" Answer—"I had that opinion at that time, since that time I haven't thought of the matter at all."

Question—"But the opinion you formed at that time was formed from newspaper reports, and you think you could ignore that opinion entirely?" Answer—"Yes, sir."

Question—"Leave it entirely out of consideration and decide the case on the evidence and law?" Answer—"Yes, sir."

The prisoner objected to the said Ballard being sworn as a juror; the court overruled the objection and the said Ballard was sworn and acted as juror in the trial of the case, and the prisoner excepted. Here is a man sworn as a juror, who had read the newspaper reports of the homicide and the evidence in the preliminary examination of the charge against the prisoner, and who had from such reports and evidence formed and expressed an opinion as to the guilt or innocence of the accused, but who by prompt answers to questions says he has no bias or prejudice against the prisoner, and the opinion so formed will not influence him in the trial of the issue. Why should he be excluded from the jury? Merely because from what he had heard of the case from what he had read he had formed and expressed an opinion of the guilt or innocence of the accused? Such a rule would put a discount on intelligence and a premium on ignorance. The human mind is so constituted, that when it receives information on any subject, it will at once form a

hypothetical opinion upon such information. The well balanced mind will not be prejudiced by such an opinion, if afterwards the information on which it was based is found to be incorrect or only partially correct. The mind, that can thus discriminate and not suffer itself to be prejudiced by impressions formed on a partial knowledge of the facts is the kind of mind that ought to be possessed by every juror who tries an issue where the life or liberty of a citizen is involved. It seems to me that the juror, Ballard, possessed such a mind. He answered the questions candidly, frankly and promptly, and showed that he had no bias or prejudice, notwithstanding he had read the evidence in the newspapers, and had formed and expressed an opinion. The questions propounded were proper, and the answers showed that the juror was unprejudiced and competent to try the case. (*Eppe's Case*, 5 Gratt. 676; *Smith's Case*, 6 Gratt. 696.) Another proposed juror, J. S. Mitchell, was sworn upon his *voir dire*, and answered the preliminary questions satisfactorily, and was then asked: "Have you formed an opinion as to his innocence or guilt?" Answer—"Yes, sir; I have."

Question—"Upon what is that based?" Answer—"Upon the evidence of the case that I read in the paper."

Question—"Were you present at the examining court?" Answer—"No, sir."

Question—"Have you conversed with any of the witnesses, that you know of?" Answer—"Not that I am aware of."

Question—"Do you think you could give the prisoner a fair and impartial trial notwithstanding the opinion you may have formed?" Answer—"That is a hard question to answer. I suppose I could."

Question—"Do you think that your opinion is of that decided character, that it would influence your verdict in deciding upon the evidence which might be offered in the case?" Answer—"Well, it might be, though I am hardly the person to judge that." Being told he "was the sole judge" he said: "I don't know what the weight of my thoughts are."

Question—"Have you any doubt as to whether you would be governed solely by the evidence and the law in the case?" Answer—"No, I do not believe I would be governed by any-

thing but the evidence. That is always my effort to try not to."

Question—"Then do you think this opinion you may have formed would influence your verdict?" Answer—"I don't know that it would."

Question—"Do you think or believe that it would?" Answer—"Well I don't believe that it would."

This is in striking contrast with the condition of mind of the juror Ballard. He knew his mental condition with reference to the opinion formed, and could say that it would not influence him in his verdict. Here the juror, who seems to be entirely honest, halts and hesitates in his answers, and evidently does not know and cannot and does not say, that his mind is free to pass upon the guilt or innocence of the accused uninfluenced by his previously formed opinion. The prisoner has no right to object to any juror, who, although he has formed, and expressed an opinion as to his guilt or innocence, yet can truthfully say that his mind is free from prejudice, and that the opinion previously formed will not influence him in his verdict; but unless the proposed juror understands his own mind on the question, and can promptly say, that it is at that time free from prejudice, and that his mind is entirely free to pass upon the guilt or innocence of the accused upon the evidence submitted to him as such juror, he is not a competent juror and should be ordered to stand aside. We think the answers of the proposed juror, Mitchell, while they indicate that he is an honest, conscientious man, yet do not show that he was free from prejudice, when he was offered as a juror, and the court erred to the prejudice of the prisoner in overruling the objection to him and ordering him to be sworn as a juror in the case.

For this error alone the judgment of the circuit court of Ohio county is reversed, the verdict of the jury set aside and the case remanded for a new trial.

REVERSED.　REMANDED.