# CHARLES TOWN.

STATE *v.* JOHNSON AND DEVINNEY.

Decided September 7, 1901.

1. DECISIONS—*Reaffirmed.*

   Syl. 1, *Flannagan's Case,* 26 W. Va. 116; syl. 1, *Smith's Case,* 24 W. Va. 814; syl. 4, *Schnelle's Case, Id.* 467, and syl. 1, *Douglass' Case,* 41 W. Va. 537, approved.   (p. 689).

2. JURY PANEL—*Felony Trials.*

   A person charged by indictment with felony is entitled under the law to a panel of twenty jurors, each and all of whom shall be "free from exception," from which panel the jury for the trial of the case is to be selected under section 3, chapter 159, Code.   (p. 690).

3. JUROR'S MIND—*Must be Free.*

   In order that one who has formed or expressed an opinion as to the guilt or innocence of the accused may be accepted as a competent juror on such panel, his mind must be in condition to enable him to say on his *voir dire,* unequivocally and without hesitation, that such opinion will not affect his judgment in arriving at a just verdict from the evidence alone submitted to the jury on the trial of the case.   (p. 691).

4. FELONY TRIALS—*Juror's Voir Dire.*

   When a juror on his *voir dire* admits that he has formed and expressed an opinion of the guilt or innocence of the accused and expresses any degree of doubt as to whether such previously formed opinion would affect his judgment in arriving at a just and proper verdict in the case, it is error to admit him on the panel.   (p. 691).

5. INDICTMENT—*Trial—Self-Defense.*

   On the trial of an indictment for murder where self-defense is relied upon by the defendant and to avail must be established by a preponderance of evidence, it is the duty of the jury to consider and weigh all evidence tending to prove self-defense, whether introduced by the defendant, or by the State, and all the evidence and circumstances in the case.   (p. 692).

6. LAW—*Reaffirmed.*

   Syllabus, *Landers* v. *R. R. Co.,* 46 W. Va. 492, approved.

Error to Criminal Court, Ohio County.

Clarence Johnson and Hugh Devinney were convicted of mur-

der in a criminal court. From a judgment of the circuit court affirming the same, they bring error.

*Reversed.*

B. B. DOVENER and S. O. BOYCE, for plaintiff in error.

R. H. FREER, ATTY. GEN., ALEX. DULIN, W. C. MEYER, and JOHN A. HOWARD, for the State.

McWHORTER, JUDGE:

At the November, 1898, term of the criminal court of Ohio County the grand jury returned the following indictment duly endorsed by the foreman, "a true bill," to-wit:

"The State of West Virginia, Ohio County, to-wit: In the criminal court of the said County. The jurors of the State of West Virginia, in and for the body of the county of Ohio, and now attending the criminal court of the said county, upon their oaths present that, Clarence Johnson and Hugh Devinney, on the 9th day of September in the year of our Lord, one thousand eight hundred and ninety-eight, in the said county of Ohio, feloniously, willfully, maliciously, deliberately and unlawfully did slay, kill and murder one Charles McLaughlin, against the peace and dignity of the State. W. C. Meyer, Prosecuting Attorney for the said county of Ohio. Found upon the information of John M. Shorts. Witness sworn in open court any by order of the court sent before the grand jury to give evidence."

On the 10th of November, 1898, the defendants appeared in person and demurred to the indictment in which the prosecution joined, which demurrer being argued was overruled by the court, and the defendants pleaded not guilty and the cause was set for trial on the 25th of November, 1898, on which last named day the defendants moved the court for a continuance until the then next term, because of the absence of Annie Riley, a witness on behalf of the defendants, and filed the affidavit of Clarence Johnson in support of the motion, but the court overruled the motion and refused to continue the case, to which ruling defendants excepted. And at the same time the defendants filed their joint petition and affidavit by permission of the court praying for a change of venue, said affidavit being accompanied by extracts from certain newspapers published daily in the city of

Wheeling and of general circulation in the city of Wheeling
and Ohio County, as a part of said affidavit and placed August C.
Meyer upon the stand, who was examined as a witness on behalf
of said petitioners on said motion for change of venue, which
said motion was on the 26th of November taken under advise-
ment, and on the 28th was further considered, and overruled,
to which ruling defendants excepted, and the court proceeded to
select a jury for the trial of the case, and after securing eleven
names, "jurors summoned by virtue of the several *venire facias*
heretofore directed by the court were elected and tried and found
free from exception and all the others who appeared being
challenged for causes, and it appearing that the several *venire
facias* have been exhausted, it is ordered that the sheriff of this
county do summon one hundred qualified jurors from the body
of the county of Ohio as heretofore directed by the court, to
appear here to-morrow morning at 8:30 o'clock, and the elected
jurors aforesaid were placed in the hands of the sheriff with the
usual instructions of the court," and the required panel of
twenty jurors having been secured, on the 30th of November the
defendants renewed their motion for a change of venue based
upon the original petition for that purpose filed in the case, and
asked that the evidence heard in open court on examination
of the jurors on their *voir dire* be made a part of the record and
considered in connection with their said motion for change of
venue based on the petition and evidence theretofore filed and
offered in the case for that purpose, and the court overruled said
motion and the defendants excepted to the action of the court
in overruling said motion and petition for change of venue.  De-
fendants put in their plea of not guilty, and a jury was impan-
eled and sworn, and after hearing the evidence and arguments
of counsel returned a verdict of guilty of murder in the first de-
gree as charged in the indictment.   The defendants moved the
court to set aside verdict and grant them a new trial and also
moved in arrest of judgment upon said verdict, and on the 9th day
of February, 1899, the court overruled said motion and pronounced
judgment against the defendants, who excepted to said rulings
of the court, and filed several bills of exceptions to the various
rulings of the court.   Defendants obtained a writ of error to the
circuit court of Ohio which being heard on the 4th day of
December, 1899, the judgment of the criminal court was affirm-

ed, to which ruling of the circuit court the defendants also excepted, and obtained from one of the judges of this Court a writ of error, and assigned as error the overruling of defendants' demurrer to the indictment. It is contended with apparent earnestness that the indictment fails to charge the defendants with murder in the first degree, and only charges murder in the second degree, hence it was error to enter judgment upon said verdict and not to arrest judgment thereon as moved by the defendants. The statute prescribes the form of indictment for the crime of murder, and it has been held time and again by this Court than an indictment after the form prescribed by the statute, section 1, chapter 144, Code, is sufficient. In *State* v. *Schnelle,* 24 W. Va. 767, (syl. pt. 4), it is held, "In this State there is no such tning as an indictment for murder in the FIRST or SECOND decree: the indictment is for MURDER, and it depends upon the proof whether it is in the FIRST or SECOND degree." *Flanagan's Case,* 26 W. Va. 116, (syl. pt. 1) ; *Douglass' Case,* 41 W. Va. 537 ; *Baker's Case,* 33 W. Va. 319. Defendants' counsel ask this Court to not only reconsider this point decided in the *Schnelle* and *Baker Cases,* but permit appellants to argue the same. The questions involved have been so often and so fully argued and so uniformly decided by the court that as said in the *Douglass Case,* 41 W. Va. at page 538, "We regard the indictment good under several decisions there mentioned (referring to the *Baker Case,* 33 W. Va. 319) and will not reopen its discussion. It has been so long used and so often approved that the matter ought to have rest." The second assignment that it was error to refuse defendants a continuance was based solely on the absence of Annie Reilly, a material witness for the defence, is disposed of by the fact that the witness was present at the trial and testified in the case, and the defendants had the benefit of her testimony.

The third assignment, "in overruling and not sustaining and granting the several motions of the defendants for a change of venue," is based principally upon the prejudice in public sentiment claimed to be wrought up against the defendants in the city of Wheeling and county of Ohio by published editorials in the three principal daily newspapers in the city, the *Intelligencer,* the *Register,* and the *Wheeling Evening News,* and the further fact that a subscription paper was circulated to some

extent among the citizens and it was shown to have been signed
by several persons, for the purpose of raising funds to employ
counsel to assist the prosecuting attorney in his duties of public
prosecutor in the prosecution of the indictment against the
defendants. The editorials complained of were somewhat sen-
sational and perhaps a little extravagant, but not more so than
usual on an occasion of the like kind. A tragedy like that in
question enacted in the public streets of a city in open day-
light, or indeed at any time of day or night, would create more
or less excitement and comment, and while such scenes are cal-
culated to a greater or less extent to arouse the indignation of
all the good citizens, *ex parte* statements, comments and publi-
cations are not likely to so affect and inflame the mind of the
whole community that twenty fair-minded men in the county
cannot be found and impaneled, who can insure to the accused a
fair and impartial trial. Reasonable, intelligent men, such as
the jurors of the county are presumed to be, do not form such
opinions in regard to the guilt or innocence of persons charged
with crime from rumors and newspaper reports as would inter-
fere with their rendering a just and correct verdict after hear-
ing the whole evidence of the sworn witnesses in the case in open
court after themselves taking a solemn oath to well and truly
try and true deliverance make upon the issue joined between
the State and the accused, according to the EVIDENCE, not ac-
cording to rumor and newspaper reports. There was no special
public demonstrations against the defendants. After the com-
mission of the deed, they went together along the public streets
some two or three squares apparently with deliberation, unmo-
lested, and surrendered themselves to the officers of the law.
The trial took place more than two months after the commis-
sion of the deed, yet the state of the public mind, while it was
invoked to support the motion for a change of venue, was not
mentioned as a reason for continuance of the case. The publi-
cations complained of were all within a few days after the
tragedy, and there is no evidence except that elicited from the
persons summoned as jurors on their *voir dire* examination, as to
the public feeling toward the defendants at the time of the
trial, and from their evidence it was not apparent that the pub-
lic mind was at that time so wrought up and inflamed as to
prevent a fair trial, and this should be made to appear in order

to entitle the defendants to a change of venue. Defendants must show good cause for such change. *Greer's Case,* 22 W. Va. 800. That subscription papers to raise money to assist the prosecuting attorney in his duties in the proper prosecution of the case should be circulated is not necessarily evidence of a personal prejudice against the accused, but may be the offspring of an honest desire for a fair and thorough investigation of the case and a proper vindication of the majesty of the law. When men get into the meshes of the law, they employ for their defense, which is their privilege and their right, the best talent obtainable, and it is entirely proper that the State should be fairly and ably represented. It is not shown how many persons contributed nor how much was contributed for the purpose. In proof as to subscriptions defendants placed on the witness stand A. C. Meyers who testified that he subscribed five dollars for the purpose of helping the McLaughlins in the case, and afterwards gave fifty cents more; that he circulated the subscription paper among the mill men at Riverside Mills in Marshall County where McLaughlin, (the deceased) had been employed "for I don't know how many years, and he *were* a friend of mine that worked there, and it was nothing more than they done for anybody," and witness said that he collected and turned over to the McLaughlins twenty nine dollars and five dollars. It is not shown what other sums, if any, were turned over. There were other subscription papers. In *Wormley's Case,* 10 Grat. 688, Judge Daniel says, "It is true it is shown that subscription papers were circulated to raise a fee for the employment of counsel to aid in the prosecution, and that they had been signed by some twenty or thirty persons, such a fact of itself is no ground for a change of venue," and this is quoted by this Court with approval in *Greer's Case,* 22 W. Va. 800. We do not think the trial court improperly exercised its discretion in refusing the motion for change of venue. It is insisted for defendants that the case was not tried by an impartial jury, that jurors were accepted on the panel of twenty, who on examination on their *voir dire* showed themselves incompetent. Under the law defendants are entitled to a panel of twenty jurors wholly free from bias or prejudice, whose minds are in condition to hear, consider and properly weigh the evidence as it is presented to them at the trial uninfluenced by what they have heard or read

of the case before the trial. A. W. Pogue, one of the panel, and one of the jurors who tried the case on his *voir dire* said he read the papers at the time of the killing, that he thought he had expressed an opinion which was likely a pretty decided one, and was still of the same opinion, and if sworn as a juror in the case, would go into the jury box with the same opinion, and he would have to hear some good evidence to change it, and in answer to the question, "And you would not go into the jury box unbiased and without a prejudiced opinion, would you?" he answered, "Well, I think not," and in answer to the question by the court, "Suppose the evidence given by the witnesses on the witness stand would show a state of facts different from that given in the newspaper, would your opinion change then?" A. "Well, possibly it would, if they had evidence. My opinion might be wrong. It might be changed." Q. "And if the evidence showed that your opinion was erroneous, you could change it?" A. "Yes, sir." That one, who has formed or expressed an opinion as to the guilt or innocence of the accused, may be accepted as a competent juror his mind must be in a condition to enable him to say unequivocally and without hesitation that such opinion will not affect his judgment in arriving at a just verdict from the evidence alone submitted to the jury on the trial of the case. Can one be held to be a competent juror under the law who admits that he goes not into the jury box "unbiased and without a prejudiced opinion," although he says, "Possibly that opinion might change, if they have evidence?" Certainly not. This juror was challenged by the defendants, the challenge overruled, and exception taken. In the *Schnelle Case,* 24 W. Va. 767, (syl. pt. 9), it is held that, "If a proposed juror on his *voir dire* admits that he has formed and expressed an opinion as to the guilt or innocence of the accused, and halts and hesitates as to his then condition of mind, and cannot say that his mind is free from bias and prejudice, and cannot say, that the previously formed opinion will not influence his verdict, he is an incompetent juror, and ought to be rejected." *Hatfield's Case,* 37 S. E. 626. C. S. Snooks, drawn on the panel, said he had formed and expressed an opinion from reading the accounts in the papers, thought he could throw aside his opinion and try the case on the evidence alone. On further examination: Q. "Your mind is affected now. You have come to certain conclusions as

to this case. Now, isn't your mind to a certain extent biased, and would not that bias and that opinion unconsciously pre- judice you in regard to the evidence you would hear in the case?" A. "It might to a certain degree." Q. "Then you have doubts as to whether you could throw aside all these influences and decide the case solely on the evidence?" A. "Yes, I have some little doubts." Jacob Straub, examined by the court: Q. "Have you formed or expressed any opinion?" A. "Yes, sir, I have." Q. "On what is that opinion based?" A. "News- paper reports." Q. "Is that opinion such as would prevent you from giving them a fair trial if you were sworn as a juror in this case, and under your oath as a juror?" A. "I couldn't say." Q. "How is it? Do you think you could give them a fair and impartial trial?" A. "I believe I could." On further examina- tion as to the opinion he had formed, he says, "As far as I know of the case, it is a decided opinion," and further said that he did not think the impressions that the reading of the news- papers made on his mind would influence his judgment. When a juror on his *voir dire* admits that he has formed and expressed an opinion of the guilt or innocence of the accused, and expresses any degree of doubt as to whether such previously formed opin- ion would affect his judgment in arriving at a just and proper verdict in the case, it is error to admit him on the panel.

The fourth assignment of error is the overruling of the objec- tions of the defendants to certain questions by the State, and permitting answers thereto to be given and considered by the jury as evidence, as well as refusing to permit questions asked by the defense notwithstanding the objections of the State and the answers thereto to be considered as evidence by the jury. As defendants in their brief and also in their oral arguments fail to insist upon any of the exceptions taken in relation to the testimony concerning which the exceptions were taken, or to even call attention to such exceptions, and I having examined many of such exceptions without finding rulings of such a nature as to be reversible error, I conclude those exceptions are waived.

The fifth assignment is that "the court erred by permitting instructions Nos. 4, 5 and 6 to be read to the jury on behalf of the State, and considered by them in arriving at a verdict in this cause." Instructions Nos. 4 and 6 are objected to on the

theory that the indictment is one charging the defendant with murder in the second degree only, and therefore under the indictment defendants could in no event be convicted of murder in the first degree, hence the instructions are erroneous and misleading. We have seen that the indictment is in the form prescribed by the statute for murder, under which it has been well settled by this Court that there can be no indictment for murder of the first or second degree specfically, but for murder generally, and the degree thereof established on the trial of the case depends upon the evidence. The further objection to No. 6, which is as follows: "The jury is further instructed by the court that even if you do believe before Friday, September 9, 1898, the deceased Charles McLaughlin, the witness William Craig, the witness Frank McLaughlin and the witness James McLaughlin, had threatened, kicked, beat, bruised and assaulted the defendants; yes if you further believe from all the evidence that the defendants followed the deceased and those who were with him, on the said Friday afternoon, down Market street, from a point above Sixteenth street to a point near the photograph gallery mentioned in evidence with the felonious intent to take the life of deceased and there without further provocation, justification or legal excuse shot and killed the deceased Charles McLaughlin as charged in the indictment then it is your duty to find them guilty of murder in the first degree," is that it "excludes any reasonable doubt, which the defendants are entitled to, especially upon the points stated in the instruction, and in effect instructs the jury that the guilt or innocence of the defendants depends merely on what the jury might conclude is preponderating evidence." The jury were thoroughly instructed on the question of reasonable doubt, being instructed by the court "that in this case the burden of the proof rests upon the prosecution to make out and prove to the satisfaction of the jury, beyond all reasonable doubt, every material allegation in the indictment, and unless that has been done the jury should find the defendants not guilty." They were further instructed "that this is not a civil case, but is a criminal prosecution; and that the rules as to the amount of evidence in this case are different from those in a civil case, and the mere preponderance of evidence would not warrant the jury in finding the defendants guilty, but before the jury can convict the defendants, they must be satisfied of their guilt beyond all reasonable doubt, and unless so satisfied, the

jury should find the defendants not guilty," and further, "that in criminal cases even when the evidence is so strong that it demonstrates the probability of the guilt of the parties accused, still if it fails to establish beyond reasonable doubt the guilt of the defendants or of one or more of them in manner and form as charged in the indictment, then it is the duty of the jury to acquit the defendant or defendants as to whose guilt they entertain such reasonable doubt." After these instructions the jury could not have been misled by instruction No. 6 because it says nothing about the reasonable doubt. Instruction No. 5 is as follows: "The court instructs the jury, that according to the law of this State which is binding upon the jury in this case, that if the jury find from the evidence that the defendants shot and killed Charles McLaughlin, the deceased, and rely on self-defense to excuse them for such killing, the jury cannot acquit them on the grounds of self-defense, unless the defendants have proven by a preponderance of the evidence that such killing was actually done in self-defense." This instruction may be misleading to the jury in that it carries with it the idea that the preponderance of evidence in favor of self-defense must be furnished by the defendants and proven by their own witnesses, while all the evidence in the case, whether introduced by the State, elicited on cross-examination of State's witnesses, or the circumstances of the case which in any manner tend to show that defendants acted in self-defense would be weighed and considered by the jury. In *Mann's Case,* 37 S. E. 613, (syl. pt. 5), it is held: "While the court may instruct the jury that the burden is on the prisoner to show by a preponderance of evidence that the killing charged was in self-defense, yet it should add thereto, in effect, that such defense may be fully sustained by the evidence for the State, or by all the evidence and circumstances in the case." Also *Jones' Case,* 20 W. Va. 764: "All error is presumed to be prejudicial, and only in extreme cases, where it clearly appears that no injury could have resulted, will this Court refused to set aside a verdict rendered on erroneous instructions." *Jackson's Case,* 97 Va. 762; *Cain's Case,* 20 W. Va. 679.

The sixth assignment: "The language used by the prosecuting attorney, W. C. Meyer, as well as the language of John A. Howard, his assistant, in addressing the jury on behalf of the State, was clearly erroneous, to the prejudice of these defendants, and

was an error which should entitle these defendants to have said verdict set aside and a new trial granted." At the close of Howard's argument, defendants' counsel moved the court to say to the jury that every word that Howard had said to them about matters about which there was no evidence which was indicated by the word "exception" should be disregarded by the jury. After the instructions given for the defendants and for the State had been read to the jury the court addressed the jury referring to certain remarks made by Mr. Howard in the course of his argument which he held to be improper and directed the jury to permit such remarks to have no weight in making up their verdict, and closed his address by saying: "I recall no other observations which need special mention. However, if there was anything that you noted, anything entirely foreign to this case, that has no relation to the facts or any evidence that was not a proper reply to the remarks of opposing counsel, you will discard it in making up your verdict."

In *Landers* v. *Ohio River R. Co.*, 46 W. Va. 492, it is held: "In order to authorize this Court to revise errors predicated upon the abuse of counsel of the privilege of argument, it should be made to appear that the party asked and was refused an instruction to the jury to disregard the unauthorized statements of the counsel." *Young* v. *State,* 19 Tex. App. 536; *Vannatta* v. *Duffy,* 4 Ind. App. 168, (30 N. E. 807) ; *State* v. *Hull,* 18 R. I. 207; 26 Atl. 191; *Chisnell's Case,* 36 W. Va. 659. The argument or speech of attorney Howard is reported in full in the record and the word exception is interjected into and following expressions of the speaker which are by defendants' counsel regarded as objectionable, quite fifty times, but it is certified in bill of exceptions "that the attention of the court was not called to the language of the counsel at any time where in the foregoing argument the word "exception" in parenthesis occurs. Said word "exception" was noted by the stenographer at the instance of defendants' counsel seated by the side of the stenographer, and was not ruled upon by the court, the court being engaged in a final review of the instructions of which the State submitted a great many." It was further certified "that on the argument of the motion for a new trial defendants' counsel insisted that the exceptions thus entered by the stenographer during the progress of the argument were not covered by the court's

ruling and remarks to the jury." It is true the remarks of the court to the jury did not cover all the expressions contained in the said argument of counsel which were excepted to in the manner aforesaid, many of which appear to be highly improper to be used in such argument, but they were not objected to at the time, nor was the court's attention called to them so as to require a ruling. There was very much of the argument which would seem was unauthorized and quite intemperate. Yet to what extent the speaker had been provoked to these expressions by the argument of the opposing counsel does not appear. It is not only no part of the duty of a prosecuting attorney, but it is improper conduct in him to indulge in personal vituperation and invective. He owes a duty to the accused as well as to the State. He is an officer of the law. While he should prosecute with all proper vigor and even with rigor, if circumstances should require it, he should be careful in all cases not to prejudice the rights of the accused, and thereby deprive him of the right guaranteed him by the Constitution and laws of his State, of a fair and impartial trial. It is a matter of regret that there is so much real cause of complaint on this score against those charged with the prosecution of crime, yet it could usually be corrected if counsel would make proper objection and bring the matter promptly to the attention of the trial court and insist upon the exclusion of such improper matter, but it is contended that when once said the desired impression is made on the minds of the jury and cannot be effaced, and there is some force in this position. On the other hand when the jury once discovers that counsel is striving by unfair means as by unauthorized statements to carry his point, he loses his influence with the jury and may prejudice his case. The average American juror is intelligent, fair minded and loves justice, and is usually sufficiently discriminating not to be far influenced by mere appeals to his passions and prejudices.

For the reasons stated, the judgment of the circuit court affirming the judgment of the criminal court, is reversed and annulled, and the judgment of the criminal court is reversed, the verdict of the jury set aside, and the case remanded to the criminal court for a new trial to be had therein.

*Reversed.*