# CHARLESTON

## STATE v. DAVIS.

Submitted June 22, 1914.    Decided June 30, 1914.

1. CRIMINAL LAW—*Evidence—Admissibility.*

    Other evidence tending in appreciable degree to connect defendant therewith, it was not error to admit evidence of the finding by a witness on defendant's premises of an empty shell with ruffled edges, of a certain gauge, used in loading shotguns, the other evidence tending to prove recent possession by him of four shells loaded with shot and steel balls, and threats by defendant to kill one Reed, who was in company with deceased when killed, such shot and balls being like those found in the body of deceased after the homicide. (p. 659).

2. SAME—*Best and Secondary Evidence—Demonstrative Evidence.*

    The rule of best and secondary evidence applicable to instruments of writing, is not generally, if ever, applicable to instruments employed, or to the clothing or other articles connected with a homicide, and the trial court committed no reversible error in permitting the witness who found the empty shell on deceased's premises to describe the shell and its condition when found, without producing the shell found, and delivered by him to the sheriff. (p. 661).

3. HOMICIDE—*Harmless Error—Admission of Evidence.*

Evidence of defendant's threat against the property of another in connection with a threat made against the one at whom the fatal shot may have been aimed does not constitute reversible error. (p. 661.

4. CRIMINAL LAW—*Harmless Error—Examination of Witnesses.*

The propounding of questions by the prosecuting attorney, on cross-examination of a prisoner on a trial for homicide, suggestive of other crimes committed by him, objections to which are promptly sustained by the trial court, and to which no answers are required or given, and no comments of counsel allowed thereon, does not constitute reversible error. Distinguishing *State* v. *Sheppard*, 49 W. Va. 582. (p. 662).

5. SAME—*Harmless Error—Instructions.*

. An instruction to the jury based on the theory of homicide by lying in wait, with a deadly weapon, and telling the jury that in such cases it is not necessary to show that the malice existing in the heart of the prisoner at the time of the killing was directed against the deceased, is not, when properly construed, an assumption of the fact of malice, so as to constitute reversible error. (p. 662).

6. SAME—*Instructions—Construction.*

Nor will such an instruction constitute reversible error, because it concludes by telling the jury if they find defendant guilty of the homicide, by lying in wait, with a deadly weapon, they must find the prisoner guilty of murder in the first degree. Such instruction properly construed means simply that homicide so committed constitutes murder in the first degree, and that it is the duty of the jury on their oaths to so find, but it does not invade the province of a jury nor deprive them of their right or duty under the statute to fix by their verdict the degree of the crime. (p. 663).

7. SAME—*Instructions—Construction—Abstract Proposition.*

Instructions numbered 4 and 5, given at the instance of the State, being the same as instructions 3 and 5, approved in *State* v. *Abbott*, 64 W. Va. 411, when read and considered in connection with all the other instructions to the jury, do not violate the rule of our decisions against propounding abstract propositions to the jury without any reference to the evidence. (p. 664).

8. SAME—*Form of Verdict—Oral Direction.*

An oral direction by the court to the jury, after returning a verdict of guilty as charged in the indictment, to return to their room and find the degree of the crime, is not violative of the statute, nor does such direction of the court constitute reversible error. (p. 665).

Error to Circuit Court, Raleigh County.

William Davis was convicted of murder in the first degree, and brings error.

*Affirmed.*

*File & File, Dunn & Anderson,* and *W. R. Thompson,* for plaintiff in error.

*A. A. Lilly,* Attorney General, *John B. Morrison* and *J. E. Brown,* Assistant Attorneys General, and *J. W. Maxwell,* for the State.

MILLER, PRESIDENT:

Indicted and convicted of murder in the first degree, the first error assigned by defendant is that the court permitted the State to prove by the witness Lilly the finding of an empty shell near defendant's home about fifteen hours after the homicide, and from which the load had been removed, evidenced by the ruffled edge of the shell, and which had never snapped or fired, the primer having also been left in the cap; and to also prove by him that unloaded shells with primer and cap can be bought, but which do not show ruffled or torn edges, as this one did; and also and in the same connection, and without the production of the shell found and delivered by the witness to the sheriff or his deputy, to exhibit to the jury another shell, which the witness said was like the shell found on the defendant's premises.

The finding of the shell and its condition were evidently admitted as circumstances tending to connect defendant with the homicide and to account for the character of the leaden shot and steel balls found in the body of the deceased, the steel balls according to the evidence being such as are found in ball-bearing bicycles.

A witness Haley testified that the defendant about two months before the homicide had exhibited to him four shells, stating that they were loaded with steel balls taken from an old bicycle; that defendant had given him one of the balls, which he had carried for a while, and had then put it in his trunk where he had kept it until a week or so after the shooting; that in the same conversation defendant had told him that two of the shells were to kill Sid Reed, and the others to

shoot the front glass out of Mont Mankin's store. It is objected that the shell found on the defendant's premises was not sufficiently connected with defendant with reference to the time, place and circumstance of the homicide so as to render it competent evidence, and moreover, that the shell which the witness Lilly exhibited was not the shell found, and therefore not the best evidence of the fact of finding it, or the condition when found, and that no reason being given for not producing the shell found and delivered to the sheriff, the use by the witness of the one in place of the other to illustrate his testimony was improper, and reversible error.

We think the finding of the shell and its condition when found being so nearly connected in time, place and circumstance with the homicide, and in connection with other evidence, tended in such an appreciable degree to connect the prisoner with the shell itself as to render the evidence admissible. Of course these facts were but circumstances, but they were very important facts in the chain of circumstances developed in the evidence, tending to connect the prisoner with the crime. Of course it is possible, as suggested, that the shell found had been placed on defendant's premises by some one else, but the jury would consider this possibility in connection with the other evidence.

In support of his contention that the prisoner was not sufficiently connected with the shell, and because of the lapse of time intervening, his counsel rely on *McBride* v. *Com..* 95 Va. 818, 824. In that case it was decided that the fact of the finding of a piece of rope on the premises of one jointly indicted with the defendant was not competent to support the theory of the Commonwealth that it was used by the prisoner in carrying the body of the deceased to the place where it was found. As the court in that case observed, there was not the slightest evidence connecting the prisoner with this rope, nor any evidence showing or tending to show the use of a rope, nor did any of the facts proven show or tend to show that any rope had been used by any one to convey the body to the place where it was found concealed in the bushes, a long distance from the place where the rope was found. Here we have a case where the deceased was killed with leaden shot and steel

balls of the same kind proven to have been in the possession of the prisoner but two weeks before the homicide, and which facts, taken in connection with evidence of his threats to kill Reed with shots of the same character, constitute evidence strongly pointing to the guilt of the accused. We think there· can be no doubt in the world of the admissibility of this evidence.

The other point made against this evidence is that the shell used by the witness to illustrate his testimony was not the best evidence. The rule relating to best and secondary evidence, applicable in the case of contracts in writing or other written instruments, is not generally applicable on a trial for homicide, to instruments employed, or the condition of the clothes or other articles connected therewith. As a general rule such articles need not be produced in court, but may be described. *Underwood* v. *Commonwealth*, (Ky.) 84 S. W. 310; Jones on Evidence, (2nd ed.) 244. The authorities relied upon by prisoner's counsel in support of his proposition, including *State* v. *Lowry*, 42 W. Va. 205, 208, are therefore inapplicable. They show that the rule invoked is applicable generally, if not exclusively, to instruments of writing. If the prisoner had desired to controvert the accuracy of the description of the shell found he could easily have summoned the sheriff, to whom it was delivered, and shown by him the fact of his possession and the condition of the shell.

The next point of error is that it was not proper to admit the evidence of the witness Haley as to the alleged threat of the prisoner to shoot the glass out of Mankin's store. Of course this threat was not in itself evidence of defendant's threat against Reed, or the deceased, but it was a part of the same conversation, and if a motion had been made to strike out the particular part relating to the shooting of the glass out of the store, no doubt it would have been stricken out. But we do not see that it was material or prejudicial. The jury would not have convicted the prisoner of the homicide because of this evidence of his threat against the property of another. If it could have had any effect it simply showed the evil mind and intent of the prisoner, in connection with the threat against Reed. We see no prejudicial error in the admission

of this evidence. Wharton on Homicide, 935, and Wharton's Criminal Evidence, (10th ed.) section 910, do not support the contentions of defendant's counsel on this proposition.

The third point of error, urged in connection with defendant's motion for a new trial, is that counsel for the State, on cross-examination of the prisoner, propounded to him certain questions imputing other crimes committed by him, as to all of which questions it is conceded the court promptly sustained the objections of the prisoner's counsel, and the witness was not required to answer. We see no reversible error in this. No such case is here presented as in *State* v. *Sheppard*, 49 W. Va. 582, 598. In that case the court permitted answers to such questions and comments of counsel thereon. The prosecutor should not have asked these questions, but when the court properly ruled on them, all was done that could be done to correct the error. If trial courts could be required to set aside verdicts for such errors of counsel few cases would ever reach an ending.

The fourth point relates to the giving of State's instruction numbered 3. The criticisms of this instruction are, (a) that it assumes the fact and existence of malice in the heart of the prisoner at the time of the homicide, and that it was directed against the deceased; (b) that though submitting to the jury the sole question of the guilt or innocence of the accused, it then tells them if found guilty they *must* find the prisoner guilty of murder in the first degree.

When fairly considered we do not think the instruction properly subject to the first criticism. If we paraphrase it by placing the last clause first, it will be clearly manifest that the fact of malice was not assumed, thus: "If the jury believe from the evidence, beyond a reasonable doubt, that the prisoner, on the morning of the homicide, was lying in wait, with a deadly weapon, to kill Reed and by mistake killed Davis", which of course would necessarily show malice, then it would not be "necessary to show that the malice existing in the heart of the prisoner at the time of the killing was directed against the deceased." This would certainly be a correct statement of the law, and this was plainly what the court intended, and what in connection with all the other

instructions given the jury would naturally understand was the intention of the court. The first part of the instruction stated abstractly would no doubt be error, but qualified as it is by what follows we do not think it misleading, or that it can be said to have assumed the fact of malice. *State* v. *Allen*, 45 W. Va. 65, 75. Where, however, the facts assumed in an instruction are admitted or clearly and conclusively proven the assumption thereof in an instruction is harmless error, and not ground for reversal, which is the converse of the proposition stated in point 11 of the syllabus of *State* v. *Robinson*, 20 W. Va. 713, and point 1 of the syllabus in *State* v. *Dickey*, 46 W. Va. 319, and the proposition we assert is affirmed by the 4th point of the syllabus in *State* v. *Douglass*, 28 W. Va. 297.

The supposed error in the use of the word "must" in this instruction is especially urged. It is contended that telling the jury that they *must* find the prisoner guilty of murder in the first degree was an invasion by the court of the province of the jury, and of the rights of the prisoner under section 19, chapter 159, serial section 5595, Code 1913, to have the jury and not the court fix the degree of the crime. No one would contend for a moment we suppose that if such is the fair interpretation of the instruction it would not be error. But taking it in connection with all the other instructions given on behalf of the State and the prisoner we do not think the use of this word rendered the instruction bad. Instructions making use of this word in the same connection in homicide cases have been approved by this court in *State* v. *Cain*, 20 W. Va. 679; *State* v *Kellison*, 56 W. Va. 691, 698, and *State* v. *Clifford*, 59 W. Va. 1. Considered in connection with all the other instructions, or even abstractly, we are quite confident the jury were not misled to believe that they were thereby deprived of their right and duty under the statute to fix the degree of the crime. That the instruction did no more than tell them that if they found the facts to be as assumed the prisoner was guilty of first degree murder, and that it was their duty under their oaths to find him so guilty, is plainly manifest from the language employed. The court had clear right to go this far. The sense in which the word "must" was

used here was in the sense of duty, it being the duty of the jury on their oaths to find him guilty of the offense proven. *Railroad Co.* v. *Scanlan,* 168 Ill. 34. While mandatory in a sense the instruction did not amount to a command to return a verdict of first degree murder and none other. We do not interpret *Rhodes* v. *Com.,* 48 Pa. St. 396, nor *Lane* v. *Com.,* 59 Pa. St. 371, nor any of the other cases cited and relied on by counsel, nor indeed the more recent cases in Pennsylvania, of *Com.* v. *Fellows,* 212 Pa. St. 297, and *Com.* v. *Chapler,* 228 Pa. St. 630, as opposed to our construction. It will be found on an examination of the instructions condemned in those cases that they either told the jury they must find a verdict as directed and none other, or used language of like import, and from which the jury could only infer they were required to find the degree of crime named in the instruction. An instruction somewhat like the one involved here was condemned in *Watson* v. *Com.,* 85 Va. 867, 9 S. E. 418, not because of the use of the word "must", but because the instruction in effect told the jury that the use of a deadly weapon by the slayer alone raises the crime to the degree of murder in the first degree, in the absence of proof of the characteristics of the crime, and for other reasons given. *State* v. *Abbott,* 8 W. Va. 742, and *State* v. *Welch,* 36 W. Va. 690, we do not think support the defendant's interpretation of this instruction. The instructions condemned in *Pennington* v. *Gillaspie,* 66 W. Va. 643, and *Fink* v. *Thomas, Id.* 490, for the use of mandatory words in respect to damages recoverable under our civil damage act, were based upon the proper construction of the statute that such damages were not a matter of right but solely within the discretion of the jury, if actual damages were found, and that as far as the court might go was to tell the jury if they found actual damages they might also find exemplary damages.

The next points we will consider relate to the giving of State's instructions numbered 4 and 5. A criticism common to both is that they state the law abstractly, and not by reference to the evidence in the case. Number 4 does make reference to evidence; number 5 wholly disconnected from other instructions given might be regarded as a statement of the law

in the abstract; but instructions are to be considered and read as a whole. These two instructions are identical with instructions 3 and 5, given and approved in *State* v. *Abbott*, 64 W. Va. 411. State's instruction number 2, in *State* v. *Sheppard, supra*, page 606, condemned for failure to make any reference to the evidence, was because it told the jury that if they believed to a moral certainty, beyond a reasonable doubt, that the defendant committed the act for which he was indicted, they should find him guilty, etc., was because it left it to the jury to say without reference to the evidence whether the prisoner was so guilty. It omitted to say "if they believe *from the evidence*" to a moral certainty, etc. In *Claiborne* v. *Railway Co.*, 46 W. Va. 363, 365, the instruction condemned and cited as an illustration of a bad instruction, was because by making no reference to the evidence, and from the character of the instruction, it necessarily suggested to the jury that in the opinion of the court there was evidence of both fraud, malice, oppression, etc., justifying the application of the legal proposition propounded. And it does not appear that other instructions were given in those cases which did refer to the evidence, and in connection with which the abstract propositions complained of could have been considered as presenting the whole case on the law and facts, as is the case at bar. In *State* v. *Kellison, supra.* 699, it is said, the instructions must be taken and read as a whole, and if upon being so read they propound the law correctly, and do not mistake it in any particular they afford no ground for setting aside the verdict. So held, also, in *McCue* v. *Com.*, 103 Va. 919. The rule on this subject is fully stated in 2 Thompson on Trials, (2nd ed.) section 2407, and need not be here repeated.

The last point is that the court improperly instructed the jury after they returned into court with their verdict of "guilty as charged in the indictment." The instruction complained of is as follows: "Gentlemen of the Jury: You have failed to state in your verdict of what you find the defendant guilty. You will take the indictment and return to your room and specify of what you find the defendant guilty, if anything; and you are hereby instructed that there is

charged in the indictment in this case murder of the first degree, murder of the second degree and voluntary manslaughter, and will return to your room and specify what you find the defendant guilty of, if anything.'' This instruction orally delivered amounted to nothing more than a direction as to the form of the verdict. Of course they were told they must fix the degree of the crime, but we do not think the instruction violated the provision of our statute. 2 Thompson on Trials, section 2380; *Ill. Cent. R. Co.* v. *Wheeler,* 36 N. E. 1023; *Smith* v. *People,* 31 N. E. 599.

Finding no error we must affirm the judgment.

*Affirmed.*