# CHARLESTON.

### STATE v. CHARLES FREY.

Submitted October 31, 1922.   Decided November 14, 1922.

1.   HOMICIDE—*Verdict Finding Defendant Guilty of Attempt to Murder, Without Specifying Degree of Murder Attempted, Held Insufficient.*

A verdict returned in a trial on an indictment charging an attempt to commit murder, which merely finds the defendant

guilty, without specification of the degree of murder at-
tempted or any reference to anything by which such degree
can be ascertained, is insufficient to sustain a judgment, by
reason of its failure to identify any offense of which the
accused is guilty.  (p. 326).

2.   CRIMINAL LAW—*Appellate Court in Awarding New Trial on
     Grounds Other Than Insufficiency of Evidence May Pass Upon
     Question of Insufficiency of Evidence to Sustain Verdict.*

     The appellate court has power to pass upon the question of
     the sufficiency of the evidence to sustain a verdict complained
     of, on the award of a new trial upon grounds other than insuffi-
     ciency thereof, by way of settlement of the principles of
     the case, to the end that the new trial may be relieved of
     embarrassment and the litigation brought nearer to its termina-
     tion.   (p. 326).

3.   HOMICIDE—*Evidence That Defendant Fired Single Shot at
     Strangers When Suddenly Aroused Not Proof of Attempt to
     Murder.*

     Proof of the firing of a single shot from a pistol, by a man
     suddenly aroused in the woods, by the approach of strangers,
     in the general direction of his disturbers, without any exchange
     of words, declaration of intent or inclination to repeat the shot
     or pursue the men supposedly shot at, is insufficient to sustain
     a verdict of guilt of an attempt to murder one of such men.
     (p. 328).

4.   SAME—*Evidence That Defendant Fired at Persons Other Than
     Person Whom He Was Charged With Having Attempted to
     Murder in Avoidance of Arrest Held Not to Sustain Con-
     viction.*

     Nor is such evidence sufficient to sustain a conviction upon
     an indictment charging an attempt to murder one of such
     persons, when supplemented by proof that, an hour or two later
     and in the same locality, the accused, in avoidance of arrest,
     fired his pistol several times at persons other than those to-
     ward whom the previous shot had been fired, with evident
     purpose to inflict injury upon them.   (p. 329).

5.   CRIMINAL LAW—*In Prosecution for Attempt to Commit Murder,
     Evidence as to Subsequent Shooting at Others Than Persons
     Whom Defendant Was Alleged to Have Fired Shot Not Ad-
     missible to Prove Intent.*

     In a trial upon such an indictment, evidence of the shooting
     on the second occasion is inadmissible to prove the intent with
     which the previous shooting was done, because of lack of

identity of the parties and the difference in the conditions under which the second transaction occurred.   (p. .329).

6.    SAME—*Evidence That One or Two Hours After Defendant Fired Alleged Shot, He Shot at Others, Not Admissible as Part of Res Gestae.*

Such second transaction cannot be deemed a part or continuation of the first, in the trial of an indictment based upon the first.   (p. 330).

Error to Circuit Court, Preston County.

Charles C. Frey was convicted of shooting at a named person with intent to commit murder, and he brings error.

*Reversed and remanded.*

*G. W. Ford,* for plaintiff in error.

*E. T. England,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

POFFENBARGER, PRESIDENT:

On an indictment charging the plaintiff in error, with having fired a loaded pistol at one Earnest Larue, with intent feloniously, wilfully, maliciously, deliberately and unlawfully to kill, slay and murder him, the jury returned a verdict in these words; "We the jury find the defendant guilty." After having overruled a motion to set aside the verdict, the court entered a judgment thereon, by which the accused was sentenced to confinement in the Penitentiary for a period of two years. To that judgment, he obtained this writ of error.

On the writ of error, he has filed no brief and he was not represented at the hearing in this court. In his petition for the writ, he complains of the overruling of his motions to quash the indictment and set aside the verdict; the entry of the judgment on the verdict; and the giving of instruction at the instance of the State. In the petition, loss of the instructions complained of is recited, and they have not been made a part of the record; wherefore the third assignment of error cannot be considered.

The indictment seems to be in the usual form and no defect therein has been perceived.

The verdict is fatally defective by reason of uncertainty in its terms. An attempt to commit a crime punishable with death, such as murder of the first degree is, constitutes a felony, punishable by confinement in the Penitentiary. An attempt to commit an offense punishable by confinement in the Penitentiary, such as second degree murder, is a misdemeanor punishable by confinement in the jail of the county. Code, ch. 152, sec. 9. In as much as both offenses are charged in an indictment drawn as this one was, the verdict merely finding the accused guilty, is clearly defective and indefinite and fails to inform the court of the exact nature, character and identity of the offense committed. If the jury had found the defendant guilty as charged in the indictment, the verdict might have been sufficiently certain, for it may have been proper to read the indictment in connection with it and in aid of its interpretation. *Moody* v. *State,* 1 W. Va. 337; *State* v. *Vineyard,* 85 W. Va. 293. As to whether that would suffice in a verdict on an indictment charging an attempt to commit murder, it is unnecessary to inquire. There is no such verdict in this case. In *State* v. *Hager,* 50 W. Va. 370, it was held that, in as much as specification of the degree of the murder attempted is indispensable to the rendition of judgment, the verdict must contain such specification. In that case, the court approved the form of the verdict finding the accused guilty of murder of the second degree. As this verdict does not in terms, nor by reference to the indictment, indicate the degree of the murder attempted, it is clearly insufficient to sustain the judgment. *State* v. *Vineyard,* 85 W. Va. 293. The suggestion that it will sustain a judgment of conviction of an attempt to commit murder of the second degree, made in the brief filed for the State, is not well founded. It was repudiated in *State* v. *Vineyard.* The verdict must identify the offense. Its identity cannot be determined by the court, upon an uncertain verdict, read in connection with the record considered as an entirety.

As the evidence has been properly made a part of the record, this court may make the further inquiry, whether the verdict is contrary to the law and the evidence, but it

is not bound to do so. In as much, as the evidence in a new trial allowed for a defect in the verdict or an error committed in the course of the trial, may differ from that introduced in the original trial, the appellate court generally refrains from comment upon the sufficiency of the evidence introduced to sustain the verdict. Ordinarily, this inquiry is not made in cases in which new trials are allowed upon grounds other than insufficiency of evidence or variance from the law. However, power in the appellate court, to test the sufficiency of the evidence in such cases, is clear. This court may pass upon it, by way of settlement of the principles of the cause, to the end that litigation may be freed from embarrassment and uncertainty and brought nearer to its termination. *Clark* v. *Beard,* 69 W. Va. 313, 318.

The circumstances of the shooting are peculiar. On a certain Sunday afternoon, five young men, of whom Larue was one, while traveling along a public highway, in an automobile, discovered a man in the brush near the road, whose face was blackened and who was wearing some sort of a headgear of which feathers constituted a conspicuous part. Out of curiosity, the young men, after having passed beyond the place of this discovery some distance, concluded to go back and make an investigation. Leaving their car in the road, they went to the point at which the man had been seen, entered the brush for some distance, and the man they were looking for suddenly arose and fired a shot from a pistol. The bullet passed between Larue and another one of the men leading the procession, and over the heads of the other three, striking the limbs of the trees above. There is a significant silence in the evidence, as to what transpired between the firing of the shot and the return of the investigators to their car. Hurriedly or otherwise they got back to it. Nobody says they were pursued. Nobody says more than the one wild shot was fired. No exchange of words is disclosed. There is no proof that the shot was accompanied by any declaration of purpose. Whether the man who fired retreated or maintained his position is not disclosed. After the return of the investigators to their car, they concluded that

they had been shot at and resolved, with the aid of help, to arrest the stranger. Accordingly, they went to Tunnelton, armed themselves, secured the assistance of the sergeant of the town and returned to the locality of the trouble. Again leaving the road and entering the woods, they soon came upon the object of their search and were immediately fired upon and White returned the fire. The witnesses say eleven shots were fired, but nobody was hurt. The man escaped and later in the day, he was arrested at his home, which was distant from the scene of the shooting, about one-half mile. There is evidence in the record, tending more or less strongly to prove him to be the man who did the shooting. Although Larue was with the party that entered the woods the second time, he was not under fire, on that occasion. He was some distance from the shooting, but close enough to hear it. The only shot that can be said to have been directed at him was the one fired on the first occasion, which he says went between him and one of his comrades, and over the heads of the others.

Enough has been stated to make it apparent that there was no attempt to shoot Larue, on the occasion of the second transaction. The conduct of the accused at that time could do no more than reflect light upon his purpose and intent in what he had previously done. Such probative force as it may have is circumstantial rather than direct. Of the five men present on the first occasion, only Larue and Paul Everly testified. The latter knew nothing of it, beyond the fact that a shot was fired that went over their heads. He never saw the man and could not say the shot was fired at them. Larue testified that the first thing he saw was the smoke from the pistol. Although he said the pistol had been pointed at him, he was unable to say it was directed toward him any more than toward any other member of his crowd. He evidently did not mean to say he knew the pistol was aimed at him before it was fired, because he said the smoke was the first thing he saw. The leveling of the weapon at him, if it occurred, may have followed the shooting. His statement to the effect that the ball went between him and another member of his party could have been based upon nothing more

than an impression or opinion. As it struck limbs of trees over the heads of the other three, it may have been intentionally fired above the heads of all of them. Everly states the transaction thus: "There was a shot fired at us, went over our heads." When asked if it had been fired at them, he replied that he did not know.

What occurred on the subsequent occasion could aid or strengthen this evidence, only by indication of the intent with which the first shot was fired. In the second transaction, the mysterious stranger, fired repeatedly and there is rather strong tendency in the evidence to prove that he fired with intent to make the shots take effect. But the conditions under which he then acted were different from those obtaining in the first transaction. The first disturbance of his meditations or purposes was rather casual and evidently attributable to mere curiosity. The second was apparently based upon hostility of some sort, and purpose to affect the interest of the accused in some way. He fired on that occasion without sufficient provocation or any ground of justification, it may be admitted, but his intention on that occasion, under the altered circumstances, does not strongly argue like intention, on the former occasion. To justify a finding of guilt under the indictment, there must have been purpose to make the shot take effect. As on the first occasion the shot went wild and there was neither a repetition thereof, nor any pursuit, while on the second occasion, there were several shots, under wholly different circumstances, we are of the opinion that the evidence of the second transaction does not materially strengthen the tendency of the other, and that, taken altogether, the evidence is insufficient to sustain the verdict. It is extremely doubtful whether, on the first occasion, anybody was actually shot at. The facts and circumstances, in so far as they are disclosed, indicate purpose on the part of the accused, if he fired the shot, merely to frighten or warn the intruders away. There was then no provocation to anger, no motive has been disclosed, manifestly there was no lying in wait and the meeting was sudden and unexpected. In this, as in any other criminal case, the evidence must be

sufficient to induce belief on the part of the jury, of the guilt of the accused, beyond reasonable doubt. This evidence is too slight and uncertain to afford a basis for such belief.

The evidence of the second shooting was admitted without objection. If it was inadmissible, the action of the court in admitting it, in the absence of an objection, was not erroneous. As the case must go back for a new trial, in which the question of the admissibility of this evidence may arise, it is proper, however, to inquire whether it is admissible. In view of the difference between the conditions obtaining on the two separate occasions, and lack of identity of the parties, we are of the opinion that the evidence of the shooting on the second was inadmissible. On that occasion, White, the town sergeant, commanded the accused to halt, when he was discovered. In this command, he perceived purpose to place restraint upon his liberty. At the same time he was virtually surrounded by White and others. If there was no justification for his arrest, and he may have believed there was none, resentment of the attempt to arrest him was a motive by which he cannot be deemed to have been actuated on the first occasion, for then no such attempt was made. Besides, a considerable period of time evidently elapsed between the two occurrences. Under some circumstances, subsequent conduct may be proved as bearing upon the intention with which an assault was made, Wigmore, Ev. sec. 364; but there must have been similarity in the acts, and that depends upon the circumstances. We think this case, as regards the admissibility of this evidence, falls within the reasoning of the decisions excluding proof of subsequent acts as bearing on the question of intention. *People* v. *Gibbs,* 93 N. Y. 470; *People* v. *Hopson,* 1 Den. (N. Y.) 574; *State* v. *Cavanaugh,* 52 La. 1251.

The subsequent conduct was not admissible as being a part of the res gestae, because it was in all substantial respects, a separate and distinct transaction. *People* v. *Gibbs,* cited.

For the reasons stated, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded.*