JOHN WAYNE FORD

*v.*

IRA M. COINER, *Warden, West Virginia Penitentiary*

(No. 13086)

Submitted October 10, 1972.     Decided December 19, 1972.

Dissenting Opinion April 25, 1973.

*Morton I. Taber,* for plaintiff in error.

*Chauncey H. Browning, Jr.,* Attorney General, *Willard A. Sullivan, Richard E. Hardison,* Assistant Attorneys General, for defendant in error.

CARRIGAN, JUDGE:

Petitioner by this writ of error seeks to reverse a judgment of the Circuit Court of Kanawha County denying appellant's prayer for a writ of habeas corpus.

The appellant, John Wayne Ford, was jointly indicted with a companion for murder, said indictment stating the appellant "feloniously, wilfully, maliciously, deliberately and unlawfully did slay, kill and murder one Henry Russell." The appellant pled "not guilty," but upon his separate trial in May, 1968, the jury returned a verdict stating, "We the jury find John Wayne Ford Guilty in the within indictment as charged."

Appellant's motion to set aside the verdict and for a new trial was overruled and on July 9, 1968, the trial court imposed sentence stating:

> "John Wayne Ford, you stand at the bar of the Court this morning with your counsel . . . . John Wayne Ford, upon the verdict of the jury finding you guilty of murder in the first degree without a recommendation of mercy, it is the judgment of this Court that you are guilty.
>
> "The Court therefore fixes your punishment to confinement in the penitentiary of this State for life."

\*　　\*　　\*

Although Section 2, Article 2, Chapter 61, Code of West Virginia, 1931, as amended, provides the penalty for murder in the first degree shall be confinement in the penitentiary for life, it is the contention of appellant, that inasmuch as the verdict of the jury did not expressly state that he was guilty of murder "in the first degree" as required by Section 15, Article 3, Chapter 62, Code of West Virginia, 1931, as amended, his sentence was

improper, and constituted error for which his conviction should be set aside.

The pertinent part of Section 1, Article 2, Chapter 61, Code of West Virginia, 1931, as amended, states "Murder * * * in the commission of, or attempt to commit * * * robbery or burglary, is murder of the first degree." It is the contention of the appellee that the evidence in the trial of the appellant established that his victim did die from injuries sustained in the commission of the crime of robbery and burglary, and that the above statute states such is murder in the first degree. Therefore, the jury verdict of guilty, as charged in the indictment, was proper to support the sentence prescribed by statute for first degree murder.

Appellant previously had sought review of his conviction and sentence in his trial for murder by writ of error to the Circuit Court of Kanawha County and to the Supreme Court of Appeals, both of which courts refused the relief. The record of Ford's murder trial was filed as an exhibit to his petition for habeas corpus, and is now before this Court. A reading of the murder trial record and evidence leads to but one conclusion, which is that this was a classic "felony-murder case."

State's Instruction No. 3 which was given sets forth the felony-murder law of this State, and related the same to the case of defendant Ford, appellant herein, and concluded by instructing that if the evidence proved the facts of death ensuing from the robbery, the crime would be "murder in the first degree." There is ample evidence, including the confession of Ford, in the trial record, to justify the giving of State's Instruction No. 3 and to warrant the jury verdict of guilty.

Section 1, Article 2, Chapter 61, Code of West Virginia, 1931, defines murder in the first and second degree, and that part defining murder in the first degree reads as follows:

"Murder by poison, lying in wait, imprisonment, starving, or by any wilful, deliberate and

premeditated killing, or in the commission of, or attempt to commit, arson, rape, robbery or burglary, is murder of the first degree. All other murder is murder of the second degree."

An examination of the record of the murder trial of appellant shows that under the evidence and instructions the jury could only have returned one of two verdicts, that is, guilty of first degree murder or not guilty. The jury verdict rendered leaves no doubt that they found Ford guilty, which, under the evidence in the case, was first degree murder.

Defendant's Instruction No. 18, also given, tells the jury that if they find the defendant guilty he would be confined in the penitentiary for the rest of his life, unless they recommend mercy. No such recommendation was made.

This Court in construing the Code provision, which was the predecessor to our present Section 3, Article 9, Chapter 62, Code of West Virginia, 1931, as amended, and which was almost identical in language, held: "In this State there is no such thing as an indictment for murder in the *first* or *second* degree; the indictment is for *murder,* and it depends upon the proof, whether it is in the *first* or *second* degree." Syllabus, Point 4, *State v. Schnelle,* 24 W.Va. 767 (1884). See also, *State v. Lewis,* 133 W.Va. 584, 57 S.E.2d 513 (1949). We therefore find that the indictment which followed the statutory form, and under which appellant was tried and found guilty, was proper, and that he could be convicted thereunder for murder committed in the commission of robbery or burglary.

The record of the murder trial further discloses that after the jury verdict had been read in open court, in the presence of appellant and his counsel, the following statements were then also made, in open court:

"THE COURT: Does the State desire to poll the jury?

"MR. CASEY: No, I do not desire to poll the jury, your Honor. I would ask if an amendment

could be made to the verdict, and then poll the jury to make certain that the amendment is correct. As I understand the law, it is 'Guilty as charged in the within indictment,' that means first degree murder; I would like to have that added to the indictment, 'guilty of first degree murder as charged in the within indictment.' I didn't quite catch the way the foreman read it. I may not have been listening to the foreman." [sic]

"THE COURT: Is the verdict signed by you as foreman?

"THE FOREMAN: Yes, signed Larry N. King, Foreman.

"MR. CASEY: Your Honor, just leave it the way it is, I have changed my mind about it."

While the failure of the court and the prosecuting attorney to have the jury verdict amended is not explained, the foregoing statements certainly brought to the attention of appellant and his counsel that the jury verdict returned did not include "guilty of first degree murder." On July 9, 1968, the date appellant was sentenced, the court also stated to the appellant that the jury had found him guilty of murder in the first degree.

We are not unmindful of the provision of Section 15, Article 3, Chapter 62, Code of West Virginia, 1931, as amended, stating that the jury shall find whether the defendant is guilty of first or second degree murder, and the holding of this Court in *State v. McCoy,* 95 W.Va. 274, 120 S.E. 597 (1923) and *State v. May,* 62 W.Va. 129, 57 S.E. 366 (1907). It is noted that the holdings in both the *McCoy* and *May* cases resulted from error assigned on appeal from murder convictions. While the failure of the jury verdict in the present case to conform with the provisions of Section 15, Article 3, Chapter 62 of the Code might have been an assignment of error to be raised on an appeal from such conviction, such was not done. In view of the statutory definition of first degree murder and the uncontradicted evidence proven at the trial, when considered with the jury verdict, we are led

to the inevitable conclusion that this was a verdict of first degree murder. This deficiency was certainly brought to the appellant's attention by the heretofore-quoted statements of the prosecuting attorney and by the court's statement in sentencing appellant on July 9, 1968.

A review of the murder trial record shows that appellant was afforded due process and a fair and impartial trial; that he was represented by two competent attorneys who exerted every possible effort to provide him a fair trial and a proper defense; that his rights guaranteed by the United States and the West Virginia Constitutions were not violated, and that he was found guilty of murder while committing robbery. Section 1, Article 2, Chapter 61, Code of West Virginia, 1931, as amended, specifically defines this offense as murder in the first degree. The jury thus having found appellant Ford guilty, could have returned only a first degree murder verdict.

This present proceeding, being under Article 4A, Chapter 53, Code of West Virginia, 1931, as amended, known as the Post-Conviction Habeas Corpus statute, is governed by the provisions thereof. Subsection (c) of said Section 1 reads in part as follows:

> "(c) For the purposes of this article, a contention or contentions and the grounds in fact or law relied upon in support thereof shall be *deemed to have been waived when the petitioner could have advanced, but intelligently and knowingly failed to advance, such contention or contentions and grounds* before trial, at trial, *or on direct appeal* * * * . When any such contention or contentions and grounds could have been advanced by the petitioner * * * on direct appeal * * * proceedings instituted by the petitioner to secure relief from his conviction or sentence, but were not in fact so advanced, there shall be a rebuttable presumption that the petitioner intelligently and knowingly failed to advance such contention or contentions and grounds." (Emphasis added.)

The deficiency in the murder trial jury verdict certainly was apparent at the time that verdict was returned,

and was pointed out to all concerned by the heretofore-quoted remarks of the prosecuting attorney. Furthermore, when sentenced on July 9, 1968, the court affirmed that the finding of the jury was "murder in the first degree." We, therefore, conclude that appellant Ford, "intelligently and knowingly failed to advance * * * on direct appeal" the deficiency in the jury verdict, and that he therefore *waived* this contention.

We conclude from the evidence in appellant Ford's trial that this murder was committed in connection with a robbery; that the jury verdict of guilty was based on the statutory definition of first degree murder, and upon the evidence presented, could only mean guilty of murder in the first degree and particularly that any deficiency in the jury verdict has been knowingly and intelligently waived. Therefore, the judgment of the Circuit Court of Kanawha County entered August 5, 1970, denying appellant Ford the relief prayed for in his writ of habeas corpus ad subjiciendum is affirmed.

*Affirmed.*

HADEN, JUDGE, dissenting:

I must respectfully dissent from the opinion of the majority in this case. For reasons which will be discussed, I firmly believe that the appellant, John Wayne Ford, has been deprived of significant constitutional rights to his detriment; that this Court has inadvertently or intentionally ignored a substantial body of law heretofore subsisting in this jurisdiction; and that this Court has inadvertently ceded legitimate state interests to the federal judiciary which is directly contrary to policy concepts of federalism espoused by the Court in its previous decisions, and by the West Virginia Legislature through its recent adoption of the West Virginia Post-Conviction Habeas Corpus Act.

John Wayne Ford was adjudged guilty of first degree murder and sentenced to life imprisonment without hope of parole upon a jury verdict found in the Intermediate

Court of Kanawha County, West Virginia, on May 22, 1968, in words as follows: "We the jury find John Wayne Ford guilty in the within indictment as charged." The indictment referenced in the jury verdict is in the general form found in West Virginia Code, Chapter 62, Article 9, § 3, 1931, as amended. The *Code* will be hereinafter cited as follows: *e.g., Code,* 1931, 62-9-3, as amended. This section of the *Code* provides "Upon the trial of such indictment the accused may be convicted of either murder of the first degree, murder of the second degree, voluntary manslaughter, or involuntary manslaughter, as the evidence may warrant." This section clearly expresses that the language used in the indictment may be used to secure conviction upon proper evidence of any of the four charges of felonious and unlawful homicide.

In this State there is no indictment for murder as being homicide in the first or second degree; the indictment is for murder and the proof determines whether it is in the first or second degree. See, *State v. Skeen,* 138 W.Va. 116, 75 S.E.2d 223 (1953) and *State v. Johnson,* 49 W.Va. 684, 39 S.E. 665 (1901).

A charge of murder in this State results in a presumption of second degree murder. Where a felonious homicide is proved it is incumbent upon the State to establish first degree murder by proof of deliberation and premeditation or the commission of murder during the perpetration of a felony. Where a felonious homicide is proved it is the burden of the defense to show circumstances in mitigation of malice thereby reducing the degree to voluntary or involuntary manslaughter. It has been held that the presumption under the provisions of *Code,* 1931, 61-2-1, as amended, is that the accused was by a general verdict guilty of second degree murder unless the jury specifically states otherwise in its verdict where homicide is proven. See, *State v. Dodds,* 54 W.Va. 289, 46 S.E. 228 (1903); *State v. Welch,* 36 W.Va. 690, 15 S.E. 419 (1892); *State v. Cain,* 20 W.Va. 679 (1882). Whether the burden of proof had been met in determining the

degree of murder rests entirely within the province of the jury. The question of the degree is one of fact, and, where trial by jury has not been waived, must be decided by the jury. *State v. Hertzog,* 55 W.Va. 74, 46 S.E. 792 (1904); *State v. Welch, supra.*

Continuing with the statutory scheme which gives recognition to the presumption in felonious homicide cases, *Code,* 1931, 62-3-15, as amended, specifically provides: "If a person indicted for murder be found by the jury guilty thereof, they *shall* in their verdict find whether he is guilty of murder of the first degree or second degree." (Emphasis supplied). Two cases directly in point on the question of specification of degree have been previously decided by this Court; these cases have not been overruled or distinguished. In *State v. McCoy,* 95 W.Va. 274, 120 S.E. 597 (1923) and *State v. May,* 62 W.Va. 129, 57 S.E. 366 (1907), it was held that "Under * * * [this section *Code,* 1931, 62-3-15, as amended], a verdict of guilty in a murder case must find whether defendant be guilty of murder in the first or second degree; and if the jury does not fix the degree of murder in its verdict it is fatally defective, and sentence will be set aside." Accord, *State v. Hager,* 50 W.Va. 370, 373, 40 S.E. 393 (1901) which held, in a case involving a charge of attempted murder, inasmuch as specification of the degree of murder attempted is indispensible to the rendition of judgment, the verdict must contain such specification. The case of *State v. Davis,* 74 W.Va. 657, 82 S.E. 525 (1914) recognizing that the degree of murder must be specified by the jury, held that a jury verdict could be corrected at the request of the court before discharge of the jury and a second verdict establishing the correct degree would be sustained. No case in this jurisdiction, however, gives the court, where a jury trial has been demanded by the accused, the right to invade the province of the jury by construing its verdict and entering a judgment and sentence thereon not in accord with the jury's findings. This is the basic problem which confronted the several

courts which have passed upon the effect of this judgment in reference to the rights of John Wayne Ford.

After his conviction in 1968, John Wayne Ford appealed that conviction first to the Circuit Court of Kanawha County and second to this Court. The appeal was refused in each instance. In neither tribunal did the appellant raise the question of the sentence of first degree murder based upon the jury verdict, failing to specify the degree of murder determined.

The appellant raised the question of deprivation of constitutional rights and violation of the West Virginia statutes in regard to the first degree murder sentence for the first time in a collateral attack. The appellant Ford filed a writ of *habeas corpus ad subjiciendum* pursuant to the provisions of the West Virginia Post-Conviction Habeas Corpus Act, *Code,* 1931, 53-4A-1, *et seq.,* as amended, in the Circuit Court of Kanawha County, West Virginia. That court specifically passed upon the error questioned in this appeal and held that the rule of the *McCoy* and *May* cases and the force and effect of the mandatory language in *Code,* 1931, 62-3-15, as amended, applied only in an "ordinary murder case" and had no application where the evidence and instructions establish a "felony murder case." This is the ruling considered on the appeal in this Court. The West Virginia cases on this subject are clear that the jury verdict in criminal cases should be read only in connection with the indictment and that instructions and evidence adduced are not matters permitted to be construed to correct a jury verdict. See, *Crawford v. Coiner,* 152 W.Va. 411, 414, 163 S.E.2d 793 (1968); *McComas v. Warth,* 113 W.Va. 163, 167 S.E. 96 (1932).

The case of *State v. Frey,* 92 W.Va. 323, 326, 114 S.E. 681, 682 (1922), specifically held the verdict must identify the offense. "Its identity cannot be determined by the court, upon an uncertain verdict, read in connection with the record considered as an entirety." I submit that the lower court's method of

distinguishing the application of the *McCoy* and *May* cases as between ordinary murder and felony murder is one not recognized by *Code*, 1931, 62-3-15, as amended. All murder so specifically found by the jury as first degree murder is punishable by life imprisonment without hope of parole unless the jury specifically recommends mercy. Distinctions based upon which theory of murder is used by the prosecution to establish its case or by the defense in exculpation or in mitigation is of no moment to the victim, who is as certainly dead under one form of murder as the other, and of no moment to the accused upon conviction of first degree murder, who is sentenced upon the generic degree of murder and not upon the legal theory of its commission.

Both the lower court and this Court in the *habeas corpus* proceeding attempted to ratify the correctness of the trial court's sentence by referring to the record in the case and the instructions given and construing the case to be a classic felony murder case susceptible to only two verdicts, guilty of first degree murder or not guilty. As hereinabove indicated, this method of interpretation is not permitted by our statutes or case law.

The majority of this Court on appeal concede the error committed in the trial court sentence. Still this Court affirmed the ruling of the lower court on the premise that the accused and his counsel knowingly and understandingly waived the error complained of here. It may be noted that the question of waiver appeared only in passing and without citation in the State's brief. It is questionable in my mind whether the matter of waiver was raised correctly from a procedural standpoint and whether it provides a vehicle of disposition of this case inasmuch as waiver was not raised as an affirmative defense by the State in its return or in any other pleading. The appellant has been provided with no opportunity to respond to the affirmative defense of waiver and, as it turns out, this defense was used by the majority to determine the outcome of this case.

Conceding, as I do, that some errors are harmless and some errors can be waived, it appears that it is incumbent upon this Court to characterize and define the error committed by the trial court and contended for by the appellant. The determination of what type of error was committed by the trial court will also determine if it can be waived; if so how it can be waived; and whether the defendant or his counsel and defendant waived the error asserted here.

The West Virginia Post-Conviction Habeas Corpus Act, *Code,* 1931, 53-4A-1, as amended, provides:

> "Any person convicted of a crime and incarcerated under sentence of imprisonment therefor who contends that there was such a denial or infringement of his rights as to render the conviction or sentence void under the Constitution of the United States or the Constitution of this State, or both, or that the court was without jurisdiction to impose the sentence, or that the sentence exceeds the maximum authorized by law, or that the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under the common-law or any statutory provision of this State, may, * * *, file a petition for a writ of habeas corpus ad subjiciendum, and prosecute the same, seeking release from such illegal imprisonment, * * *."

The language of this statute expressly provides a convicted and incarcerated criminal the opportunity to complain of four different kinds of errors resulting in his alleged illegal confinement. The first is a denial or infringement of a federal or state constitutional right rendering conviction or sentence void; the second is that the sentencing court was without jurisdiction to impose the sentence; the third is that the sentence imposed exceeds the maximum authorized by law; and the fourth is that the conviction or sentence is subject to collateral attack upon any ground of alleged error heretofore available under the common law or statutory provisions of this State.

Ford contends that the sentence was void because his constitutional rights were denied or abrogated. He also contends that the trial court was without jurisdiction to impose the sentence of first degree murder upon him. Though not directly raised by the appellant, it is obvious that if his contention is correct, the jury did not find him guilty of first degree murder, and his sentence for first degree murder imposed by the trial court exceeds the maximum authorized by law. Also, under the rule of the *McCoy* and *May* cases, *supra,* the sentence if defective was a ground of alleged error heretofore available to the appellant under a statutory provision of this State and the common law.

I firmly believe that an examination of the legal contentions raised, directly and by implication, will lead one to the conclusion that all four grounds for relief provided by *Code,* 1931, 53-4A-1, as amended, are available to Ford. The sentence is void in that the court lacked jurisdiction to pronounce it on the verdict delivered to him; the sentence exceeds the maximum prescribed by law for second degree murder, and the error complained of is one heretofore recognized by the common law and the statutes of this jurisdiction. This dissent could be lengthened considerably, but to no real purpose. I deem it more important to thoroughly examine the question of waiver of constitutional rights.

The constitutional rights denied the appellant are two in number. The Sixth Amendment to the United States Constitution guarantees one accused of a crime to the right to trial by jury. The Fourteenth Amendment to the United States Constitution guarantees due process of law to an accused in a state court and guarantees to him the right of trial by jury extended by the Federal Constitution. The Fourteenth Amendment to the Federal Constitution and § 10, Article III of the West Virginia Constitution guarantee an accused in the state court procedural due process of law and therefore extend to him the benefits of the procedures mandated in *Code,* 1931, 62-3-15, as amended. I submit that the Federal and

State constitutional provisions providing a right to trial by jury to an accused in a state court and guaranteeing due process of law clearly establish that John Wayne Ford is entitled to a trial by a jury, and a *complete* trial by a jury, as mandated by the statute which, upon his conviction, entitles him to be told by the jury, *and not the court,* the degree of murder of which he stands convicted.

*Code,* 1931, 53-4A-1, as amended, goes on to provide that an incarcerated prisoner may not receive the benefit of his contentions if (1) they have been previously and finally adjudicated, or (2) waived in previous direct or collateral proceedings. Specifically, the petitioner in *habeas corpus* under the Act may assert successfully a contention:

> " * * * [I]f and only if such contention or contentions and the grounds in fact or law relied upon in support thereof have not been previously and finally adjudicated or waived in the proceedings which resulted in the conviction and sentence, or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings which the petitioner has instituted to secure relief from such conviction or sentence."

The statute goes on to provide in subsection (b) that the principle of *res judicata,* as applicable to a legal contention, applies where there was a decision on the merits on that point after a full and fair hearing thereon and does not then apply if "said decision upon the merits is clearly wrong."

As to the concept of waiver which was employed by this Court to base its affirmed ruling against the appellant, Section 1 of the statute, *supra,* in subsection (c) provides:

> "For the purposes of this article, a contention or contentions and the grounds in fact or law relied upon in support thereof shall be deemed to have been waived when the petitioner could have advanced, but intelligently and knowingly failed to advance, such contention or contentions

> and grounds before trial, at trial, or on direct appeal (whether or not said petitioner actually took an appeal), or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings instituted by the petitioner to secure relief from his conviction or sentence, * * * ."

But this subsection goes on to provide a special rule of waiver as respects asserted constitutional errors. It says all contentions are waived as hereinbefore set forth, "* * * unless such contention or contentions and grounds are such that, under the Constitution of the United States or the Constitution of this State, they cannot be waived under the circumstances giving rise to the alleged waiver." Significantly the majority, in its opinion disposing of this case, did not quote this language relating to the assertion of constitutional errors resulting in the appellant's confinement. It is to be noted, however, that the statute subsequently in subsection (c), *supra,* goes on to indicate that when any such contentions could have been advanced by the petitioner on a previous occasion, "* * * but were not in fact so advanced, there shall be a rebuttable presumption that the petitioner intelligently and knowingly failed to advance such contention or contentions and grounds."

The majority of this Court in this case found a knowing and understanding waiver of the right to assert the error of the conviction and sentence and based that waiver on appellant's and/or his counsel's silence at trial and their failure to assert the error, contemporaneously with its occurrence, or in proceedings subsequent to trial, and previous to the collateral attack. The majority indicates inferentially that appellant could have asserted the error when it was brought to his attention by the trial court and by the prosecutor at the time the jury brought in the verdict failing to specify the degree of murder. The inference also obtains from the majority that they believe it was incumbent that appellant or his counsel do something at that time to cure the error or, that by

their silence, they waived the right to assert it. References in the lower court's opinion and in the majority's opinion in this case to the fact that appellant failed to raise the error on direct appeal also give rise to the inference that there was a knowing and understanding waiver of the right to assert the error. Those conclusions do not "hold water." They fly in the face of the modern development of constitutional and criminal law as enunciated by the Supreme Court of the United States, the federal judiciary system, and by this Court.

Since the year 1963, when Gideon's "trumpet" was heard across the land, the states, if previously unwilling, have been forced to accede to judicial fiat that, "* * * those guarantees of the Bill of Rights which are fundamental safeguards of liberty immune from federal abridgement are equally protected against state invasion by the Due Process Clause of the Fourteenth Amendment." *Gideon v. Wainwright,* 372 U.S. 335, 341 (1963). The *Gideon* case established that the Sixth Amendment to the United States Constitution guarantees the right of counsel to an accused in a criminal case and that the Fourteenth Amendment guarantees the right to counsel to an indigent defendant in a state criminal trial unless that right is competently and intelligently waived. Equally important to the doctrines of federalism between the several states and the federal government was the enunciation of the rule that the federal judiciary was not precluded by state procedure and state law when an accused asserted a fundamental right protected by the Bill of Rights to the Federal Constitution. The procedural trilogy of *Fay v. Noia,* 372 U.S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963); *Townsend v. Sain,* 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963); and *Sanders v. United States,* 373 U.S. 1, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963) clearly establish that where a fundamental federal right is involved, such as the right to counsel or the right of an accused against self-incrimination, and the state court denies relief on the grounds that the accused intelligently and understandingly waived the right in question, under those circumstances

the state court has rendered a decision on a question of federal constitutional law and that, therefore, the federal court *eo instante* is given the right to make its independent determination on that question to apply its standards rather than the state standards to the determination of that question.

Subsequent to the *Gideon* and *Fay v. Noia* decisions, all states, including this one, immediately felt the pressure of federal preemption on what had heretofore been a matter peculiarly within the province of the state, that is, the disposition of criminal cases involving an accused in the state courts. With the spate of *habeas corpus* cases entered by state prisoners in the federal courts and the recognition by the federal courts of abridgement of federal rights in state procedures, resulting in the release of the habeas petitioner, these state systems began to respond. Recognizing that state procedures were in many instances inadequate as vehicles to adjudicate the rights of state prisoners, legislatures across the land responded with the enactment of post-conviction remedy statutes supplementing and broadening the Great Writ of *Habeas Corpus* to attempt to guarantee complete and fair state procedures to their prisoners for vindication of alleged impaired constitutional rights. See, *Comment,* 54 CALIF. L. REV. 1262 (1964). Such a statute was enacted in this jurisdiction in the year 1967 with the adoption of the Post-Conviction Habeas Corpus Act found in *Code,* 1931, 53-4A-1, as amended. By this Act the Legislature intended to meet the triple goal of (1) providing for a fair and complete adjudication of the rights of an accused in a state court; (2) providing for timely and final conclusion of criminal litigation; and (3) protecting the legitimate interest of the state to define and adjudicate crimes and punishment therefor, within its boundaries.

The *Gideon* case and the *Fay v. Noia* case recognized that even fundamental rights could be waived, but held that the waiver could not be presumed from a silent record or from the silence of the accused. Beginning with the case of *State ex rel. May v. Boles,* 149 W.Va. 155, 139

S.E.2d 177 (1964), this Court recognized "The right to the assistance of counsel, being a fundamental right, will not be presumed to have been waived by the failure of the accused to request counsel, by his entry of a guilty plea or by reason of a record silent on the matter of counsel." Syllab. Pt. 3, *Id.* Also, "One accused of a crime may waive his right to the assistance of counsel but such waiver must be made intelligently and understandingly." Syllab. Pt. 5, *Id.*

In addition to giving recognition to the right to counsel as a fundamental right protected under the United States and West Virginia Constitutions, this Court extended that protection to the right of the accused to a trial by a jury in the case of *State ex rel. Fountain v. King,* 149 W.Va. 511, 142 S.E.2d 59 (1965) in which the right to trial by jury was recognized as a fundamental right and in which the Court held that waiver of that right could only occur under certain circumstances, "A person accused of a crime may waive his constitutional right to assistance of counsel and his constitutional right to trial by jury, if such waivers are made intelligently and understandingly." 513, *Id.* See, *State ex rel. Muldrew v. Boles,* 151 W.Va. 1033, 159 S.E.2d 36 (1967); *State ex rel. Rider v. Boles,* 149 W.Va. 282, 140 S.E.2d 611 (1965); *State ex rel. Powers v. Boles,* 149 W.Va. 6, 138 S.E.2d 159 (1964).

Later, in 1969, the United States Supreme Court recognized that the right to trial by jury was a fundamental right equivalent to the right of assistance of counsel with the case of *Duncan v. Louisiana,* 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968), accord, *Boykin v. Alabama,* 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). The *Duncan* case, *supra,* expressly held that the right to trial by jury as guaranteed by the Federal Constitution was likewise imposed upon the states in respect to the accused in a state proceeding by the provisions of the Fourteenth Amendment to the United States Constitution.

I deem these cases important in that they recognize that the right to trial by jury is a fundamental right

guaranteed by the Bill of Rights in the Federal and West Virginia Constitutions and that the protection accorded that right is equivalent and on a parity with the fundamental right of assistance of counsel. In other words, the tests applied to an alleged waiver of the right to counsel are the tests to be applied to an alleged waiver of the right to trial by jury. These tests the majority failed to apply to Ford's contentions; else a different result would have been obtained.

According to the case of *Leftwich v. Coiner*, 424 F.2d 157 (4th Cir. 1970) the Post-Conviction Habeas Corpus Act enacted by the West Virginia Legislature in 1967 fully meets the suggestions of Congress and the federal courts that states enact adequate post-conviction remedies. This case involves the Fourth Circuit's survey and review of the general purport of the provisions of the Act and that court's approval, as the federal judiciary, of West Virginia's attempt to accord adequate post-conviction remedies to prisoners. In signifying approval of the West Virginia Act, the *Leftwich* court compared the provisions of the Act to the ABA Standards Relating to Post-Conviction Remedies (tentative draft, 1967). The commentary to the draft to be found on pp. 87-89, §6.1 and §2.1 extensively treated the subject of waiver and recognized the difficulty of defining waiver in any context, and specifically in relation to post-conviction remedies. Particularly relevant to our problem is the following passage:

> "* * * One use employs waiver as expressive of a rule of finality of judgments: issues that were not presented at a specified time or in a specified way are said to have been waived . . . . *A wholly different waiver is implied in the familiar principle that a party to a criminal action can intelligently and understandingly forgo certain rights, and that his choice will be binding upon him. This suggests an active, knowing choice, in advance of the occasion when the waived right might have been useful, affirmatively expressed in the appropriate forum.* The polarities of these two types of 'waiver' are clearly

dissimilar, but different combinations of facts can produce blends that are not clearly the waiver-foreclosure-by-judgment or the waiver-voluntary-relinquishment.

"Essential to the difference between these two types of waiver is that one, the finality rule, is an attribute of the procedural law of judgments, while the other, the voluntary relinquishment rule, is a corollary of the law creating the underlying right. The distinction between these is clearly visible when a federal constitutional right is considered in the contest of a state post-conviction proceeding: what constitutes a waiver-voluntary-relinquishment is a question of federal constitutional law; the question of the scope of a prior judgment is a question of state procedural law. If the state court denies relief on the grounds that the applicant intelligently and understandingly waived the right in question, it has rendered a decision on a question of federal constitutional law. On the other hand, if the state court denies relief on the ground that the applicant should have raised the question at some earlier proceeding, it has rendered a decision on a question purely of state law. Where it is found that an applicant has relinquished a right, the decision is tantamount to holding that the right was never violated. The decision, thus, is directly on the merits. Where the foreclosure by judgment rule is applied, the court refuses to reach the merits of the asserted denial of the constitutional right.

*"As used in this report, 'waiver' refers to voluntary relinquishment rather than foreclosure by judgment * * * ."* (Emphasis supplied.)

See also, Meador, "Accomodating State Criminal Procedures and Federal Post-Conviction Review" which opined at 929: "[I]f the states hope to terminate a substantial portion of their criminal business in their own courts, the states may not invoke any doctrine of waiver more stringent than [the *Noia* concept]."

I suggest, as the *Leftwich* court does by implication, that the West Virginia Post-Conviction Habeas Corpus Act was enacted in accord with the suggestions of the

ABA Standards Relating to Post-Conviction Remedies and that the Act was passed, also, with the recognition of the waiver rules expressed in *Gideon v. Wainwright, Fay v. Noia, Duncan v. Louisiana, supra,* and like federal cases. Further, the Act was passed with the recognition of the holdings of this Court in the *Fountain* and *State ex rel. May v. Boles* case, *supra,* recognizing the right to assistance of counsel and the right of trial by jury as being fundamental constitutional rights; the waiver of which rights can only occur through the knowing and understanding, overt acts of the accused.

As the United States Supreme Court held in the case of *Boykin v. Alabama, supra,* with respect to the waiver of the right to trial by jury and other fundamental constitutional rights:

> "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Malloy v Hogan, 378 US 1, * * * Second, is the right to trial by jury. Duncan v Louisiana, 391 US 145, * * * Third, is the right to confront one's accusers. Pointer v Texas, 380 US 400, * * * We cannot presume a waiver of these three important federal rights from a silent record." *Id.,* p. 243.

The majority opinion seemingly implies by reference to Ford's competent counsel that *counsel* may have waived, by his failure to object, the error asserted in this case. Although that matter has not been passed upon in this jurisdiction, it has received treatment and explanation by the United States Supreme Court. Recognizing that some waivers, and particularly nonpersonal waivers made by counsel, may be strategic in nature and acquiesced in by the silence of petitioner's counsel in order to save the effect of the error for another forum or another time, the Supreme Court held in *Henry v. Mississippi,* 379 U.S. 443, 85 S. Ct. 564, 13 L. Ed.

2d 408 (1965) that the evidence must show that the nonpersonal waiver was intelligently and therefore knowingly and deliberately made "When the right is so fundamental as to be determinative of the result of the trial, it must be personally waived; or, if that is not possible because of the exigencies of trial procedure and efficiency, then counsel's waiver must be deliberate." See, *Comment,* 54 Calif. L. Rev. 1262, 1276 (1964). One need only to peruse the record in the *Ford* case on appeal and observe the record of the trial, contemporaneously with the occurrence of the error, to recognize that no one—not the trial court judge, the prosecutor, the defense counsel, nor the appellant Ford—recognized the import of the trial court's error. How then, may it be inferred that the waiver occurred deliberately, only on the part of counsel or the accused. Inasmuch as the counsel for the accused asserted almost every imaginable error in his note of argument seeking an appeal to this Court, and did not include in the petition of error the error complained of in this collateral proceeding, it is inconceivable that he knowingly and intelligently waived a substantial right of the appellant Ford, at trial or afterwards, regarding that error.

I do not by this commentary wish to inpugn the competency of counsel either by his representation of accused at trial or subsequent to trial on appeal. Effective assistance of counsel, however, should not and does not mean flawless performance. I rather say that counsel could not waive defendant's right unless he understood those rights and intended to relinquish them. The question of competency of counsel is not relevant in testing waiver, nor is it equivalent or synonymous as the majority would have us believe. The *fact* of assistance of competent counsel does not provide the circumstances to presume waiver of constitutional defects which could have been but were not raised in previous proceedings, direct or collateral.

I am concerned that the conclusions reached by the majority either ignore, or by implication overrule: (1)

the statutory mandate that a jury in a murder case, upon finding of guilt, must specify the degree of murder; (2) the previous recognition by this Court and the United States Supreme Court that trial by jury is a fundamental right guaranteed protection by the Federal and State Constitutions; (3) that such right cannot be waived, except upon the knowledge and understanding of the accused, and by his considered choice. In addition, and of equal concern, the conclusion of the majority represents, to my thinking, an abdication of the State's legitimate interest to conclude its own criminal proceeding and cedes such right to the federal judiciary. This decision, ruling that one may silently waive a basic constitutional right, will force the federal judiciary to again preempt West Virginia remedies to protect the rights of an accused in a criminal case much as those courts did during the period from 1963, after *Gideon* and *Noia, supra,* were decided, to January 25, 1967, when the West Virginia Legislature enacted the West Virginia Post-Conviction Habeas Corpus Act. This decision could very well nullify the salutary benefits of the Post-Conviction Habeas Corpus Act and render the Act a vessel empty of the justice it sought to carry.

If I were concluding this case, I believe there to be no error in the finding of guilt by the jury; the error is in the sentencing of appellant by the trial court to life imprisonment without hope of parole, inconsistent with the penalty for a verdict of guilt of the crime of second degree murder.

For the reasons stated herein, I would affirm the conviction and return the appellant to the Intermediate Court of Kanawha County for judgment and resentencing in accordance with the jury's verdict of second degree murder.